FILED _____ LODGED
_____ RECEIVED

MAY 12 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

Court's Copy

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Case No.   3:22-cv-05340-RJB

CHRISTIAN DOSCHER, pro se

                    Plaintiff,

          vs.

TIMBERLAND REGIONAL LIBRARY, an
Intercounty Rural Library District, ("TRL");

CITY OF TUMWATER, a municipality,
("Tumwater" or "TPD");

CARLOS QUILES, a policy-maker for
Tumwater Police Department, in his individual
capacity; a resident of Washington State;

R. J. BAUGHN, a Tumwater City policeman
in his individual capacity; a resident of
Washington State;

STACY A. BROWN, a Tumwater City
policewoman in her individual capacity; a
resident of Washington State;

RACHAEL E. BLACK, a Tumwater City
policewoman, in her individual capacity; a
resident of Washington State;

COMPLAINT FOR DAMAGES,

DECLARATORY RELIEF,

INJUNCTIVE RELIEF,

and

DEMAND FOR JURY TRIAL

Complaint -                                1                    Christian Doscher, pro se
                                                        6435 Doe St.  SE, Tumwater, WA.  98501
                                                                    360-339-3257
                                                              barryjoneswhat@gmail.com

1

LEANNE HEALD, a Tumwater Librarian, a
resident of the State of Washington, in her
individual capacity;

2

DIANE FROELICH, a Tumwater Librarian, a
resident of the State of Washington, in her
individual capacity;

3

4

KAYLA EMERSON, A Tumwater Librarian, a
resident of the State of Washington, in her
individual capacity;

5

6

JAMES A. MORAN, a Tumwater City
policeman in his individual capacity; a resident
of Washington State,

7

8

DANIELLE L. DAWSON, a Tumwater City
policewoman in her individual capacity; a
resident of Washington State,

9

10

MARI NOWITZ, a private citizen of
Washington State, in her individual capacity;

11

12

KENDRA JONES, TRL Deputy Director, a
private citizen of Washington State, in her
individual capacity;

13

14

JON WEIKS, Chief of Tumwater Police, was a
resident of the State of Washington, in his
individual capacity;

15

16

BOB HALL, President of TRL Board of
Trustees, a private citizen of Washington State,
in his individual capacity;

17

18

NICOLETTE OLIVER, President Elect of
TRL Board of Trustees, a private citizen of
Washington State, in her individual capacity;

19

20

BRIAN ZYLSTRA, Lewis County, member of
TRL Board of Trustees, a private citizen of
Washington State, in his individual capacity;

21

22

23

24

25

Complaint -                                      2

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

1  HAL BLANTON, Lewis County, member of
   TRL Board of Trustees, a private citizen of
2  Washington State, in his individual capacity;

3  JASMIN DICKHOFF,  member of TRL Board
   of Trustees, a private citizen of Washington
4  State, in her individual capacity;

5  KENNETH SEBBY, Mason County,  member
   of TRL Board of Trustees, a private citizen of
6  Washington State, in his individual capacity;

7  MATTHEW VAN NORMAN, a TRL
   employee, a private citizen of Washington
8  State, in his individual capacity;

9  ERICA MCCALEB, a TRL employee, a
   private citizen of Washington State, in her
10 individual capacity;

11 TRINA FOLLEY, a TRL employee, a private
   citizen of Washington State, in her individual
12 capacity;

13 ANDREA HEISEL, TRL Director of Content
   and Access, a private citizen of Washington
14 State,  in her individual capacity;
   2935 CLOVERFIELD DR SE, Olympia, WA,
15
   CHERYL HEYWOOD, TRL Executive
16 Director and a private citizen of Washington
   State, in her individual capacity;
17                                   Defendants

18

19

20

21

22

23

24

25 Complaint -                    3         Christian Doscher, pro se
                                        6435 Doe St.  SE, Tumwater, WA.  98501
                                                  360-339-3257
                                            barryjoneswhat@gmail.com

1

2 1. I, Christian Doscher, Plaintiff **appearing pro se** in the above-entitled action, being over

3 the age of 18, competent to testify and with personal knowledge of the following, hereby affirm:

4 2. *Summary* – On both September 14, 2021 and September 18, 2021, the Timberland

5 Regional Library unlawfully denied Plaintiff's disability accommodation requests and called the

6 police to have Plaintiff 'trespassed', thus contrary to statutes making public "buildings"

7 accessible to disabled persons (RCW 70.84.010(2) and (3)).  On both dates, despite the

8 Tumwater police concluding Plaintiff had committed no crime, they extended their Terry stops

9 past the point they had lost reasonable articulable suspicion, arrested Plaintiff and trespassed him

10 from the Library.  This is a failure-to-accommodate case, including other types of torts, in which

11 Plaintiff seeks monetary, declaratory and injunctive relief under both Title II of the *Americans*

12 *with Disabilities Act* ("ADA") 42 U.S.C § 12101 et seq., and the *Washington Law Against*

13 *Discrimination* (RCW 49.60, "WLAD").  Plaintiff demands monetary damages under a theory of

14 Negligence.  Plaintiff seeks compensatory damages from all Defendants under 42 U.S.C. § 1983

15 for violation of his 4th Amendment right against unlawful seizure, and seeks punitive damages

16 under 42 U.S.C. § 1983 against the individual persons who proximately caused Plaintiff to be

17 unlawfully seized and unlawfully arrested.  Plaintiff finally seeks compensatory and punitive

18 damages for Civil Conspiracy pursuant to 42 U.S.C.  §§ 1983 and 1985.

19 3. Where a plaintiff is proceeding pro se, the Court has an obligation to construe the

20 pleadings liberally and to afford the plaintiff the benefit of any doubt.  Bretz v. Kelman, 773 F.2d

21 1026, 1027 n.1 (9th Cir. 1985) (en banc).  The plausibility of a pleading is distinct from

22 "detailed." See Twombly, 550 U.S.  at 555; Iqbal, 556 U.S.  at 678.  "All allegations of material

23 fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.

24

25 Complaint -      4     Christian Doscher, pro se
                   6435 Doe St. SE, Tumwater, WA.  98501
                     360-339-3257
                  barryjoneswhat@gmail.com

1    Dismissal of the complaint is appropriate only if it appears beyond doubt that the plaintiff can

2    prove no set of facts in support of the claim which would entitle him to relief." Hurlic v.

3    Southern California Gas Co., 539 F. 3d 1024, 1028 (9th Cir.2008).

4                    **LIBRARY'S MASK POLICY VIOLATED THE ADA**

5        4.   The Library's mask policy on both September 14, 2021 and September 18, 2021 was:

6    
7    | ❶ Face Masks Required |
     | --- |
     | Starting August 13, regardless of vaccination status all staff and patrons (5 and older) must wear a mask inside any Timberland Libraries. |
     | Empezando el 13 de agosto, sin importar el estado de vacunación, todos los empleados y usuarios (mayores de 5 años) necesitan usar cubrebocas adentro de la biblioteca. |

8

9        5.   This mask policy came with no exceptions and thus unfairly burdened mask-exempt

10   breathing-disabled persons.  The 9th Circuit is clear that facially neutral policies can still violate

11   the ADA:

12        We have repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly
         burden disabled persons, even when such policies are consistently enforced.  See, e.g., Martin v. PGA Tour,
13       Inc., 204 F.3d 994, 999-1000 (9th Cir.2000) (holding that a golf association rule banning use of golf carts in
         certain tournaments violated the ADA when it failed to modify this rule for a disabled golfer with a mobility
         impairment), aff'd, 532 U.S. 661, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001).
14                                            McGary v. City of Portland, 386 F. 3d 1259, 1265 (9th Cir. 2004)

15                        **TORT CLAIMS WERE TIMELY**

16       6.   Pursuant to RCW 4.96.020(4), Plaintiff in October of 2021 served both Defendant TRL

17   and Defendant Tumwater with respective tort claims due to their conduct as recounted herein.

18   More than 60 days have elapsed since those tort claims were filed.  Thus this lawsuit is ripe for

19   filing.

20                                   **PARTIES**

21       7.   Plaintiff CHRISTIAN DOSCHER ("Plaintiff") is a private citizen who was a resident of

22   Tumwater, Washington at all times alleged herein.  He appears in the case "pro se".

23

24

25   Complaint -                        5              Christian Doscher, pro se
                                                       6435 Doe St. SE, Tumwater, WA. 98501
                                                       360-339-3257
                                                       barryjoneswhat@gmail.com

1

2

8. Defendant CITY OF TUMWATER ("Tumwater") at all times alleged herein is and was a municipal corporation within Washington State;

3

4

9. Defendant TIMBERLAND REGIONAL LIBRARY ("TRL") at all times alleged herein is and was a public Library in an Intercounty Rural Library District in Tumwater, Washington.

5

6

10. Defendant JON WEIKS is and was at all times alleged herein the Tumwater Police Chief and a resident of Washington State and is sued in his individual capacity.

7

8

9

11. Defendant CARLOS QUILES was one of the makers of the policy which the TPD on both above-alleged incident-dates were carrying out, he is a resident of Washington State, and is sued in his individual capacity.

10

11

12

12. Defendant R. J. BAUGHN, is one Tumwater police officer who trespassed Plaintiff on both September 14 and September 18. He is a resident of Washington State, and is being sued in his individual capacity.

13

14

15

13. Defendant STACY A. BROWN is a Tumwater police officer who had provided Baughn with backup during the September 14 incident. She is a resident of Washington State, and is sued in her individual capacity.

16

17

18

14. Defendant RACHAEL E. BLACK, is a Tumwater police officer and had provided Baughn with backup during the September 14 incident, is a resident of Washington State, and is sued in her individual capacity.

19

20

21

15. Defendant DIANE FROELICH is the Tumwater Librarian who initially granted but then unlawfully withdrew Plaintiff's ADA disability request during the September 14 incident. She is a resident of the State of Washington and sued in her individual capacity.

22

23

24

25

Complaint -                                                6                          Christian Doscher, pro se
                                                                                        6435 Doe St. SE, Tumwater, WA. 98501
                                                                                        360-339-3257
                                                                                        barryjoneswhat@gmail.com

16. Defendant LEANNE HEALD, is the Tumwater Librarian who sought police-assisted trespass of Plaintiff during the September 14 incident. She is a resident of the State of Washington and is sued in her individual capacity.

17. Defendant KAYLA EMERSON, is a Tumwater Librarian who interacted with Plaintiff during the September 14 incident. She is a resident of the State of Washington and sued in her individual capacity.

18. Defendant MARI NOWITZ is the Tumwater Librarian who sought police-assisted trespass of Plaintiff during the September 18 incident. She is a private citizen of Washington State and sued in her individual capacity.

19. Defendant KENDRA JONES, is the TRL Deputy Director who authorized Nowitz on September 18 to seek police-assisted trespass of Plaintiff. Jones is a private citizen of Washington State and sued in her individual capacity.

20. Defendant JAMES A. MORAN, is one of the Tumwater City policeman who trespassed Plaintiff during the September 18 incident. He is a resident of Washington State and sued in his individual capacity.

21. Defendant DANIELLE L. DAWSON is a Tumwater police officer and provided backup to Baughn and Moran during the September 18 incident. She is a resident of Washington State and sued in her individual capacity.

22. Defendant BOB HALL, President of TRL Board of Trustees, was at all times relevant to this Complaint a private citizen of Washington State;

23. Defendant NICOLETTE OLIVER, was at all times relevant to the Complaint a private citizen of Washington State; of Washington State;

Complaint -                                      7                        Christian Doscher, pro se
                                                                    6435 Doe St. SE, Tumwater, WA. 98501
                                                                              360-339-3257
                                                                    barryjoneswhat@gmail.com

24. Defendant BRIAN ZYLSTRA, was at all times relevant to this Complaint a private citizen of Washington State; of Washington State;

25. Defendant HAL BLANTON was at all times relevant to this Complaint a private citizen of Washington State;

26. Defendant JASMIN DICKHOFF was at all times relevant to this Complaint a private citizen of Washington State;

27. Defendant KENNETH SEBBY was at all times relevant to this Complaint a private citizen of Washington State;

28. Defendant ERICA MCCALEB was at all time relevant to this Complaint a TRL employee and a private citizen of Washington State;

29. Defendant TRINA FOLLEY was at all times relevant to this Complaint a TRL employee and a private citizen of Washington State;

30. Defendant ANDREA HEISEL was at all times relevant to this Complaint a TRL Director of Content and Access and a private citizen of Washington State;

31. Defendant CHERYL HEYWOOD was at all times relevant to this Complaint a TRL Executive Director and a private citizen of Washington State;

## JURISDICTION AND VENUE

32. Venue is proper in the Western District of Washington under 28 U.S.C. § 1391 because the events and omissions giving rise to Plaintiff's causes of action occurred in Tumwater, Washington, which is located in the Western District.  See 28 U.S.C.  §§ 84, 1391(b).

33. This Court has federal-question jurisdiction over this action under 42 U.S.C.  §§ 1983, 1985.  See 28 U.S.C. § 1331.

34. This Court has federal-question jurisdiction over Plaintiff's federal ADA claim.  Id.

Complaint -                                8                    Christian Doscher, pro se
                                                               6435 Doe St. SE, Tumwater, WA. 98501
                                                                         360-339-3257
                                                               barryjoneswhat@gmail.com

35. This Court has supplemental jurisdiction over Plaintiff's state law claims (WLAD and Negligence) under 28 U.S.C. § 1367.  All causes of action arise from the same common nucleus of facts.  The facts supporting the § 1983 claims also support the ADA, WLAD and negligence claims:

> In terms of proof, Plaintiffs' claims are nearly identical.  Proving Plaintiffs' § 1983 claim will almost certainly prove the allegations necessary to support Plaintiff's state-law claims.  This overlap indicates that the federal claim is not merely an appendage to the state claims.  On the contrary, the claims are so interwoven that it cannot be said that the state law claims here substantially predominate over the federal claims.
> Twin Sisters Gun Club v. EMLEN (ED California, March 14, 2018)

**NO ANTI-SLAPP IMMUNITY**

36. Plaintiff sues all Defendants under 42 U.S.C. § 1983 and the ADA, which preempts all State law immunity protections, see Romstad v. Contra Costa County, 41 Fed.Appx.  43 (9th Cir.2002) citing Wallis v. Spencer, 202 F.3d 1126, 1144 (9th Cir.2000) ("Immunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations.").  See also Williams v. Alhambra Sch.  Dist.  No.  68, 234 F.  Supp.  3d 971, 978-79 (D.  Ariz.  2017) (determining an Arizona state immunity statute could not immunize the defendants from the plaintiff's 42 U.S.C. § 1983 claim).  Such preemption also forecloses immunity claims based on the Washington Constitution.  See United States v. Hart, District Case No.  2:11-CV-00513-EJL, 2012 WL 1662435, at *2-3 (D.  Idaho Apr.  3, 2012) (striking an affirmative defense invoking the legislative immunity provision of the Idaho Constitution because "[f]ederal law controls the scope of any immunity raised as a defense in this federal cause of action…").

**CONFLICT PREEMPTION**

37. The Library's defense will be that it was authorized by Governor Inslee's then-in-effect orders to create and implement a TRL mask policy so restrictive that it freed TRL from its duties

6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

under the ADA to grant reasonable disability accommodation requests from mask-exempt

breathing-disabled patrons seeking to use the library's temperature controlled rooms, electrical

sockets and restrooms.  But it doesn't matter if that is a correct interpretation of the Governor's

Orders:  the Ninth Circuit has repeatedly recognized that where enforcement of state law would

subject a disabled person to an ADA violation, the ADA must still be followed.  McGary v. City

of Portland, 386 F.3d 1259, 1265-66 (9th Cir. 2004)(considering reasonable accommodation

claim against city over its failure to grant individual disabled plaintiff additional time to clean his

yard before enforcing nuisance abatement code); Updike v. Multnomah County, 870 F.3d 939,

949-53 (9th Cir. 2017) (considering reasonable accommodation claim against county over its

denial of an ASL interpreter and auxiliary aids to individual deaf pretrial detainee), with

Crowder v. Kitagawa, 81 F.3d 1480, 1485-86 (9th Cir. 1996)(considering reasonable

modifications to Hawaii law requiring 120-day quarantine of all dogs entering the state, which

was found to have a disparate impact on blind users of guide dogs).

**TUMWATER'S AWARENESS OF ADA REQUIREMENTS DURING PANDEMICS**

38. Thurston County knew, before September 14, 2021, that the ADA requirements could not

be trivialized by public health mandates, thus Tumwater, which is within Thurston County,

should also have known same.  From *Face Coverings and Businesses_ Balancing the ADA with

Public Health During COVID-19 _ ADANW.pdf*, a document Thurston County produced in

answer to Plaintiff's public records request:

> Certain disabilities make wearing a face covering difficult or impossible. A person with a respiratory
> condition, for example, may be unable to breathe effectively with a face covering. This raises questions
> about how to balance current government health and safety mandates with the rights that the ADA
> affords people with disabilities. **Even during a pandemic, public health mandates do not replace the
> ADA; both must be considered... However, if a business requires face coverings, this does not override
> the ADA. The business must still consider requests for accommodations for people with disabilities.**

Complaint -                                    10                     Christian Doscher, pro se
                                                                    6435 Doe St. SE, Tumwater, WA. 98501
                                                                                360-339-3257
                                                                        barryjoneswhat@gmail.com

## COUNT 1:  LIBRARY'S SEPTEMBER 14
## VIOLATION OF ADA TITLE II

39.    To state a claim for monetary damages under Title II of the ADA, the plaintiff must allege the following four elements taken from Thompson v. Davis, 295 F.3d 890, 895 (9th Cir.2002):  (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

40.    *(1) the plaintiff is an individual with a disability* – Plaintiff in 1988 was diagnosed by a doctor with a breathing difficulty and was given an exemption from wearing <u>any face mask, covering or shield</u> **(collectively, "mask")** when he was feeling light-headed or short of breath.

41.    This breathing difficulty has persisted through the years into the present, involves both respiratory ailments, general panic due to childhood trauma and substantially limits Plaintiff's life activities.  The disability causes Plaintiff to become easily "winded" by simply walking 20 feet or more if he is wearing a mask over both mouth and nose, therefore his breathing disability substantially limited the major life activity of wearing a mask during the CORONA virus pandemic.  This disability was afflicting Plaintiff during his below-described September 14, 2021 visit to the the Tumwater TRL branch, to a degree that while Plaintiff could wear a mask over his mouth, he could not wear it over his nose at the same time without becoming light-headed and panicked.

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

42.    *(2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities* – On September 14, 2021 TRL was open to the public, Plaintiff was a member of the public, and had not previously been banned from the Library.

43.    *(3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity* – Governor Inslee's own interpretation of his Ordered mask-exemptions is as follows:

> 8/31/2021
> Updated COVID-19 Facial Covering Guidance
> for Employers, Businesses, and Organizations
> Summary of update: This document aims to clarify requirements and expectations for employers, businesses, and organizations as the state strengthens its facial covering guidelines based on the increase in cases, hospitalizations, and deaths from COVID-19.
> ...• Inquiry Option: A business may choose to engage with a customer who enters a business without wearing a face covering.  In these circumstances, if a customer enters without wearing a face covering, the business may engage with the customer to ensure the customer is aware of the face covering requirement and to ask if the customer is exempt from wearing a face covering as provided in the Secretary of Health's face covering order and Proclamation 20-25.15.
> If the customer responds stating s/he is not fully vaccinated but is otherwise exempt under the Secretary's order, the business may:
> • Offer a reasonable accommodation (alternative way to receive service, if feasible).  If the reasonable accommodation is refused, deny the person entry; or
> • Allow the customer to enter.[1]

44.    There was no third option to just say no to disabled customers who wish to partake of the same benefits the business is giving to non-disabled customers.

45.    On September 14, 2021 Plaintiff entered TRL wearing his mask over his mouth but not his nose, reasonably believing that his "exempt" status under the State Secretary's then-in-effect Order justified his partial compliance, the Library being a *public* service and thus more strictly governed by the Secretary of Health's stated "exemptions" than a private business would be.

---

[1] https://www.governor.wa.gov/sites/default/files/COVID19%20Facial%20Coverings%20Guidance.pdf ("Guidance.pdf")

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

46.   Upon entry to the Library Plaintiff acted in conformity to the above-described Governor's interpretation of his own mask-mandate and informed Defendant Froelich that he was not fully vaccinated, that he had a breathing disability, that he could only wear his mask over his mouth <u>but not his nose</u> and that he was "otherwise exempt under the Secretary's order" *(Updated COVID-19 Facial Covering Guidance, supra)*.

47.   Plaintiff also requested an ADA and WLAD disability-accommodation consisting of nothing more than simply allowing him to use three services/benefits that the Library that day was affording to non-disabled patrons (use of isolated temperature controlled room, use of electrical sockets for charging laptops, and use of restrooms).

48.   Plaintiff did not express or imply that he wished to check out any books or library materials, so the Library's taking check-out materials to the front door for maskless disabled persons, whom the library policy required to wait outside, has nothing to do with the facts of this case.

49.   ADA requests that are solely verbal will trigger a public entity's duty to accommodate, the requests need not be in written form.  Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

50.   Froelich granted this request.

51.   Her granting of such request means the Library has waived the statutory defense of "direct threat".

52.   Her granting of such request necessarily implies the Library did not believe granting the request would subject the library to undue cost, undue burden, fundamental alteration of structure or direct threat, thus Library cannot possibly benefit in this case from these 4 statutory defenses under the ADA.

Complaint -                                         13                          Christian Doscher, pro se
                                                                    6435 Doe St.  SE, Tumwater, WA.  98501
                                                                                  360-339-3257
                                                                            barryjoneswhat@gmail.com

53.   It also doesn't matter if the Library later felt Plaintiff's partially masked presence in the library constituted a 'direct threat': Plaintiff's status under the Governor's Orders as "exempt" from the face mask requirement meant that Plaintiff was allowed to remain unmasked in any *public* building such as the TRL building.

54. About an hour after TRL granted aforesaid accommodation request, Defendant Emerson told TRL staff member Defendant Heald that Plaintiff was requesting a disability accommodation and not wearing his mask over his nose.  This was contrary to Washington State policy and City of Tumwater's own policy:

**Should I say something if someone near me isn't wearing a face covering?**
**No**. Someone may have a medical reason for not wearing a face covering. Whether those around you are wearing face coverings or not, focus on keeping 6 feet of distance between you and washing your hands often.

**What should I do if I see someone not wearing a mask?**
**Nothing**.  Some people have conditions or circumstances that would make wearing a cloth face covering difficult or dangerous.[2]

55.   Defendant Heald then called 911 and claimed Plaintiff was "refusing to leave".

56.   Heald was lying, nobody had asked Plaintiff to leave.

57. The reason Heald lied to 911 that way is because previous to this incident TPD had encouraged TRL staff to exaggerate when reporting mask-violating patrons to the police, since otherwise TPD might construe the complaint as non-criminal and refuse to respond:

From: Kendra Jones [mailto:kjones@trl.org]
Sent: Wednesday, August 25, 2021 4:54 PM
To: 28:817c2506-de4a-4795-971e-371ea75a03ed; Juliet Lawson-Hall; Chris Chrzan; 28:0af95b67-5890-4306-9c1c-a8591cead09e; Jessica Friberg; Ryan Williams; Sarah Ogden; Morgan Sohl
Subject:
Couple more Admin updates- wanted to get these to you before I leave for another vacation so you can work on follow ups where applicable:
...•   We spoke with the lawyer about the police response issues. **Essentially, there is no way to compel the police to assist**. What we are doing is the way forward- LMs develop relationships with their police/sheriff offices to explain the needs of the library (most often just police presence is enough). The key message from the attorney- staff need to be honest about the situation when they call. **Even if a police department tells staff to**

---

[2] https://web.archive.org/web/20200913190828/https://coronavirus.wa.gov/information-for-you-and-your-family/face-masks-or-cloth-face-covering

Complaint -                                    14                    Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

**say certain phrases, etc. in order to get a response (for example, to say you feel your life is threatened whether or not they actually feel that way)** they need to stick to the truth. I won't have to to message LMs about this today but wanted you all to know in case there are questions from LMs.

58. As the details from the September 18 incident prove, *infra*, yes, TPD viewed the matter of Plaintiff's violation of Library mask policy and his alleged "refusal to leave" to be a non-criminal matter they were initially unwilling to confront Plaintiff about.

59. On September 14 no TRL staff or employees ever complained to TPD that Plaintiff had ever done anything more than that he wasn't wearing his mask "properly" and he had "refused to leave".

60. Plaintiff on that day did not violate any lawful policy of the Library, nor did he engage in any criminal activity.

61. *deliberate indifference* - At no time that day did Froelich, Heald or anybody else investigate or even attempt to investigate Plaintiff's disability accommodation request. Under ADA Title II, the failure to adequately investigate needs of individuals with disabilities supports a finding of the required element of deliberate indifference. Mark H. v. Hamamoto, 620 F.3d 1090, 1099 (9th Cir.2010), citing Duvall v. County of Kitsap, 260 F.3d 1124, 1139-40 (9th Cir.2001).

62. TPD officer Baughn arrived a few minutes later with officers Brown and Black as backup and escorted Plaintiff out at the Library's request, "trespassing" him for the rest of the day.

63. *(4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability* - The 9th Circuit will find that discrimination was "by reason of" disability where facially neutral policies burden the disabled person more than non-disabled persons. In McGary v. City of Portland, 386 F.3d 1259 (9th Cir. 2004), the court held that the plaintiff had

Complaint -                                          15                    Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

sufficiently alleged that he was discriminated against "by reason of" his disability where a facially neutral policy burdened him in a manner "different from and greater than it burdened non-disabled residents." In so holding, the *McGary* court explained that the 9th Circuit has "repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are "consistently enforced." Id at 1265.

64.   Between March 2020 and September 14, 2021, TRL created and adopted a mask-mandate for adult library patrons.

65.   That policy forbade maskless adult patrons from entering the library building.

66.   That policy did not allow for any exceptions for breathing-disabled mask-exempt adult patrons.

67.   That mask policy was so absolute, TRL stopped considering itself to be under an ADA-obligation to grant reasonable accommodation requests from disabled-mask exempt persons.  All unmasked patrons were required to wait outside the Library, period, no exceptions, even if a patron was classified in Governor Inslee's Orders as "exempt" from the mask-mandate.

68.   ***pointless reference to check-out materials*** -- For unknown reasons TRL keeps pushing the fact that they were willing to bring check-out materials to the front door for maskless adult patrons whom the policy had required to wait outside.  That is a pointless contention:  Plaintiff on September 14 never sought to take any library materials out of the library.

69. On September 15, 2021 TRL deputy director Kendra Jones ("Jones") communicated to both TRL staff Nicole Thode and Bernard Weathersbee that if Plaintiff in the future entered the Library without wearing a mask and refused to leave, TRL should request police-assisted trespass from TPD and ban Plaintiff from the Library for one year.  Therefore, TRL was rather clear about how utterly absolute and exceptionless its mask-policy for adult patrons really was.

Complaint -                                     16                    Christian Doscher, pro se
                                                                      6435 Doe St.  SE, Tumwater, WA.  98501
                                                                                  360-339-3257
                                                                           barryjoneswhat@gmail.com

70. ***Damages for Count 1*** - As a direct and proximate result of Defendant's actions, supra, Plaintiff endured violation of his right to a disability accommodation, his right against unconstitutional seizure, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

71. Defendant Library's September 14 withdrawal of its prior disability accommodation, supra, was willful, deliberate, malicious and was commenced in reckless and callous disregard for Plaintiff's rights under the ADA and the 4th Amendment.

## COUNT 2:  LIBRARY'S SEPTEMBER 14
## VIOLATION OF WLAD

72.   Under the WLAD, Plaintiff must show that (1) he has a disability; (2) the Defendants' establishment is a place of public accommodation; (3) Defendants failed to provide him with services comparable to those they provide to people without disabilities; and (4) his disability was a substantial factor causing the discrimination.  Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001), citing Fell v. Spokane Transit Auth., 128 Wash.2d 618, 637, 911 P.2d 1319 (Wash.1996) (en banc).

73.   ***(1) the plaintiff has a disability*** – The specifics of Plaintiff's breathing difficulty on September 14 were given earlier in this Complaint.  Thus at the time of the Library's tortious conduct as alleged herein, Plaintiff had an "actual" disability, see RCW 49.60.040(7)(a)(ii).

74.   ***"perceived as disabled"*** - As alleged supra, the Library had initially accommodated Plaintiff's disability exemption request on September 14.  Their knowingly allowing such partially masked Plaintiff to roam the Library like this after granting his request to accommodate his breathing-disability thus constitutes Defendant's having "perceived" Plaintiff as needing a disability accommodation under RCW 49.60.040(7)(a)(ii).

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

75.   *(2) the defendant's business or establishment is a place of public accommodation* – According to RCW 49.60.040(2), "public Library" constitutes a "place of public resort, accommodation, assemblage, or amusement".

76.   RCW 49.60.030(1) prohibits discrimination in places of "public…accommodation" on the basis of "any sensory, mental, or physical disability," and secures the right of people with disabilities "to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement," RCW 49.60.030(1)(b).  RCW 49.60.040(14), in turn, defines "full enjoyment of" as including:

> [t]he admission of any person to accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement, without acts directly or indirectly causing persons . . . with [disabilities], to be treated as not welcome, accepted, desired, or solicited.

77.   The Library sells used music cds and dvd movies, and requires payment from patrons who use Library printers to print more than 100 sheets of paper, therefore the Library facilitates "the sale of goods, merchandise…"

78.   The Library also offers the public amusement in the form of games for children, including offering computers as a way to access amusement on the internet, which activity is also clearly recreational.  The Library also has a large room intended for the public to gather for various religious events and seminars.  The Library is a place of "assemblage" because it is known to host choirs, musical groups and allow for small public meetings in a room intended for just such purposes.  The Library thus fits the statutory definition, and is therefore a place of public accommodation under RCW 49.60.040(2).

79.   *(3) the plaintiff was "discriminated against by receiving treatment that was not comparable to the level of designated services provided to individuals without disabilities"* - As alleged, supra, the Library without reason first granted Plaintiff's September 14 disability

Complaint -                                18                    Christian Doscher, pro se
                                                                6435 Doe St.  SE, Tumwater, WA.  98501
                                                                        360-339-3257
                                                                barryjoneswhat@gmail.com

accommodation request, but withdrew the grant about one hour later.  Thus TRL did not give

Plaintiff services comparable to the level of designated services the Library was providing to

non-disabled individuals that same day.

80.    TRL created the Library's exceptionless mask policy despite knowing that such policy

unlawfully freed the Library from its legal obligations under the WLAD to investigate and grant

reasonable accommodation requests.

81.    *(4) the plaintiff's disability was a substantial factor causing the discrimination* – This

element is a question of fact which typically precludes summary judgment.  See Fell v. Spokane

Transit Authority, 911 P.2d 1319, 1328 (1996).  The Plaintiff's disability was the *only* factor

causing the discrimination.  The Library never expressed or implied any other reason for

requesting police-assisted removal of Plaintiff, except his refusal to wear his mask in the precise

way Library policy had required, and his falsely alleged "refusal to leave".

82.    Plaintiff Doscher likewise "was not able to patronize a [Library]" because of the

Library mask policy.  Thus "Solely because of his disability, Plaintiff was treated differently

from individuals" who were capable of wearing masks.  Lewis v. Phan, No.  19-0314-JCC (WD

Wash.  Feb.  24, 2020).

83.    A plaintiff must establish that he was treated as unwelcome.  Evergreen Sch.  Dist.  No.

114 v. Human Rights Comm'n, 39 Wn.  App.  763, 695 P.2d 999 (1985).  While the Library did

not ask Plaintiff to leave on September 14, the Library's working with police to remove Plaintiff

on that day anyway obviously made Plaintiff feel no less unwelcome than if the Library had

asked him to leave.

84.    Defendant Library's refusal to accommodate Plaintiff's disability flies in the face of

the WLAD:

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

WAC 162-26-070(6) requires that [Costco] reasonably accommodate a customer's disability, which includes providing admittance into the store without inquiries necessitating disclosure of the nature or scope of a customer's disability.

Grill v. COSTCO No.  C03-2450Z (WD Washington 2004)

85.    By having Plaintiff trespassed from the Library via police, TRL failed to serve Plaintiff as required in WAC 162-26-070(1).

86.    By refusing to serve Plaintiff , TRL caused Plaintiff to feel not welcome, accepted, desired, or solicited the same as a nondisabled person, WAC 162-26-070(4).

87.    The Library's mask-policy for adults violated WAC 162-26-070(5) because it required segregating disabled persons to outside the library front door so as to "restrict a person or deny a person the ***use of facilities*** or services in connection with the place of public accommodation where same service is possible without regard to the disability."

88.    By withdrawing without reason TRL's granting Plaintiff's ADA accommodation request for access to Library's temperature controlled rooms, restrooms and electrical sockets for charging laptops, TRL violated WAC 162-26-070(6).

89.    The law requires that the Library "provide admittance into" the Library for disabled persons. **The Library's policy of bringing books out to the front door, does not enable the mask-exempt person to use the Library's temperature controlled room, its electrical sockets or its bathrooms, the only three services Plaintiff on September 14 had requested a disability-accommodation for.**

90. ***Damages for Count 2*** - As a direct and proximate result of Defendant's actions, supra, Plaintiff endured violation of his right to an disability accommodation, his right against unconstitutional seizure, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

91. Defendant Library's September 14 withdrawal of its prior disability accommodation,

supra, was willful, deliberate, malicious and was commenced in reckless and callous disregard

for Plaintiff's disability and constitutional rights.

**COUNT 3:  DEFENDANT TUMWATER'S
SEPTEMBER 14 UNREASONABLE SEIZURE,  42 U.S.C. § 1983**

92.    To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the

defendant acted under color of state law, and (2) the defendant deprived him of rights secured by

the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th

Cir.2006).

93.    *(1) the defendant acted under color of state law* – "The traditional definition of acting

under color of state law requires that the defendant in a § 1983 action have exercised power

`possessed by virtue of state law and made possible only because the wrongdoer is clothed with

the authority of state law.'" West v. Atkins, 487 U.S.  42, 49 (1988) (quoting United States v.

Classic, 313 U.S.  299, 326 (1941)).  The three named police officers Baughn, Brown and Black,

supra, arrived at the Library on September 14 in response to a 911 call from TRL employee

Leanne Heald falsely reporting that Plaintiff was "refusing to leave" (i.e., possible crime of

trespass).  "…the police must take 911 emergency calls seriously and respond with dispatch."

United States v. Terry-Crespo, 356 F.3d 1170, 1175-76 (9th Cir. 2004).

94.    Upon Baughn's arrival at the library, he informed Plaintiff that Library had reported

him as not wearing his mask properly and as refusing to leave (i.e., possible crime of trespass).

95.    When Plaintiff tried to explain that the Library within the prior hour had granted his

ADA accommodation request to wear the mask that way and had never asked him to leave,

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

1
2
Defendant Heald interrupted by contradicting Plaintiff's testimony, causing Baughn to motion toward her to walk away.

3
4
5
96. Baughn then asked Plaintiff to produce documentation of Plaintiff's exemption-status. This was contrary to Defendant Tumwater's own policy as it was worded that day on City of Tumwater's own webpage:

**Exemptions**

There are some exemptions to the Department of Health order. People with certain disabilities or health conditions, people who are deaf or hard of hearing, and children under the age of 2 are considered exempt. Officials encourage the use of a face covering by children ages 3-5 if possible. Children 5 and older must wear a face covering.

Individuals are not required to provide proof of any condition that qualifies as an exemption. It is important for people to be supportive and tolerant of one another during this pandemic. Avoid confrontations, and if someone continues to question you, tell someone from the business and ask them to help.

If you have a medical exemption, a business should not ask for proof or details. Businesses should offer alternative service options, like curbside delivery, to keep workers and customers safe. [3]

10
11
12
13
97.   Notice, that quote also shows Tumwater believed, before September 14, 2021, that breathing-disabled persons were 'exempt' from the Governor's mask-mandate.  The Library nullified the legal force of such exemption-status because the library-mask policy unbelievably disallowed even mask-*exempt* persons entry into the Library.

14
15
98.   See also Washington State CoronaVirus Response (COVID-19) webpage, accessed by Plaintiff September 13, 2021:

16
17
*I have a reason I cannot wear a face covering.  Am I required to document or prove that?*
**No**, the order does not require you to document or prove a reason for not wearing a face covering.

18
19
20
99.   When Plaintiff explained that he was not required to provide that documentation, Baughn then replied "you need to leave immediately".  Thus there can be no doubt that TPD was acting under color of state law.

21
22
100.   *(2) the defendant deprived him of rights secured by the Constitution or federal law* –
First, in light of Baughn's command "you need to leave immediately" (*supra*), this confrontation

23
24
---

[3] https://www.ci.tumwater.wa.us/our-community/covid-19-response/face-coverings-and-masks

25
Complaint -                                          22                        Christian Doscher, pro se
                                                                    6435 Doe St. SE, Tumwater, WA. 98501
                                                                               360-339-3257
                                                                        barryjoneswhat@gmail.com

constituted a Terry stop or investigatory detention:  A person's liberty is restrained when, taking

into account all of the circumstances surrounding the encounter, the police conduct would have

communicated to a reasonable person that he was not at liberty to ignore the police presence and

go about his business." Hopkins v. Bonvicino, 573 F.3d 752, 759 (9th Cir. 2009).  Examples of

circumstances that might indicate a show of authority constituting a **seizure** would be…the use

of language…indicating that compliance with the officer's request might be compelled."  State v.

Young, 135 Wash.2d 498, 510, 512, 957 P.2d 681 (1998).  Baughn's chosen words "need" and

"immediately" reasonably give the impression that Plaintiff Doscher's compliance with that

order might be compelled. *Young, supra.*

101. Then Baughn concluded Plaintiff had committed no crime.  The following is a verbatim

recounting of the parties' actual words after Baughn told Plaintiff to leave:

> Doscher:  "I'd ask you to make a written report of this too."
> Baughn:  "We're not going to make a written report of this, as **it's not a criminal act** unless you make it that way".

102. In saying this, Baughn was implicating Tumwater Civil Dispute Policy 496.3(b), which

says:

> (b) Members should not dismiss alleged or observed criminal violations as a civil matter and should initiate the appropriate investigation and report when criminal activity is apparent.

103. In other words, Baughn did not "initiate the appropriate investigation and report…",

because Baughn did not believe Plaintiff's *alleged* refusal to leave the Library at the request of

the Library employees had constituted a criminal act.

104. Tumwater's "investigation report" dated October 11, 2021 admits "No formal reports

were completed, as no enforcement action was necessary".  Therefore TPD either violated Policy

496.3(b), supra, or did not feel that the incident involved criminal activity.  TPD's belief that

Complaint -                                        23                        Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

Plaintiff's refusal to leave library didn't constitute the crime of trespass is further confirmed by its initial refusal on September 18 to make Plaintiff leave the library.

105. During the September 14 incident, after Baughn asserted Plaintiff had committed no crime (and thus after he lost whatever reasonable articulable suspicion he might have previously obtained from TRL and 911 dispatch), he did not terminate this Terry stop, but escorted Plaintiff out of the Library, accompanied by officers Brown and Black, with instructions that Plaintiff was banned from the Library for the rest of the day.

106. In the absence of physical force, an officer's show of authority implicates a Terry stop where the suspect <u>actually submits</u> to the police-assertion of authority. See U.S. v. Smith, 633 F.3d 889, 893 (9th Cir.2011). Plaintiff submitted to Baughn's demand "you need to leave immediately" by leaving the Library during aforesaid escort.

107. This Terry stop was also unlawful because before Baughn confronted Plaintiff, he spoke with Heald and asked if she wanted to file a criminal trespass. From Heald's September 14, 2021 incident report: "The police asked if we wanted to issue a criminal trespass **and I declined** because I had not been given authority to do so… He wanted to know if he was being criminally trespassed and was told no…"

108. Baughn's extending the Terry stop past the point where he lost whatever reasonable articulable suspicion he may have previously obtained, absolutely establishes the unconstitutional nature of this investigatory detention. There is no case law saying an officer can reasonably continue detaining a suspect after concluding he has committed no crime.

109. ***lack of reasonable suspicion*** – At no time on September 14 did Baughn or any other TPD officer ask Plaintiff whether anybody had asked him to leave. To establish reasonable suspicion, an officer "may not solely rely on the claim of a citizen witness that he was a victim of

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

a crime, but must independently investigate the basis of the witness' knowledge or interview

other witnesses." Peng v. Mei Chin Penghu, 335 F.2d 970, 976-77 (9th Cir. 2003) (test under

California law for whether an officer has probable cause for a warrantless arrest is "very similar

to the Fourth Amendment test applied by [the Ninth Circuit]").  After all, the investigatory

detention does not assume the complaining witness is telling the truth, the detention is for the

purpose of verifying or dispelling the officer's suspicion.  Florida v. Royer, 460 U.S.  491, 500

(1983).  The officer must base suspicion not merely on factors supporting suspicion of criminal

activity ***but also factors that deny it***.  US v. Manzo-Jurado, 457 F.  3d 928, 938 (9th Cir. 2006),

citing Gonzalez-Rivera v. INS, 22 F.3d 1441, 1447 (9th Cir.1994).

110.  TPD's failure to ask Plaintiff whether anybody had asked him to leave was critical:

> …it is clearly-established that an officer acting in his official capacity may not [detain] a person for criminal
> trespass when the owner or the owner's agent has not asked him to leave the premises.
> Larsen v. Fort Wayne Police Dept., 825 F.  Supp.  2d 965, 978 (ND Indiana 2010)

111.  Plaintiff's statutory defense to trespass should have been clear to Officer Baughn at

the scene before escorting Plaintiff out of the Library:

> RCW 9A.52.090
> Criminal trespass—Defenses.
> In any prosecution under RCW 9A.52.070 and 9A.52.080, it is a defense that:
> …(2) The premises were at the time open to members of the public and the actor complied with all lawful
> conditions imposed on access to or remaining in the premises;

112.  There can be no denying that at the time Plaintiff was in the Library September 14, it

was open to the public.  So TPD should have known on that day that the *first* element of

Plaintiff's statutory defense in RCW 9A.52.090 was fulfilled.

113.  There can be no denying that Plaintiff "complied with all lawful conditions imposed

on access to or remaining in the premises", since Baughn had concluded that Plaintiff had

committed no crime (i.e., Plaintiff's alleged disobedience to face mask policy was not a criminal

Complaint -                                    25                        Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

1    act, nor was his refusal to leave upon request).  Thus TPD should have known on that day that

2    the second element of Plaintiff's statutory defense in RCW 9A.52.090 was fulfilled.

3        114. **Damages for Count 3** - As a direct and proximate result of Defendant's actions, supra,

4    Plaintiff endured violation of his right against unconstitutional seizure, and endured humiliation,

5    indignity and loss of his right as a member of the general public to access the Library.

6        115.    Defendant Tumwater's September 14 conduct, supra, was willful, deliberate,

7    malicious and was commenced in reckless and callous disregard for Plaintiff's disability and

8    constitutional rights.

9              **COUNT 4:  DEFENDANT CARLOS QUILES'**
         **SEPTEMBER 14 VIOLATION OF 42 U.S.C. § 1983**

10       116.    Supervisory liability exists even without overt personal participation in the offensive

11   act if supervisory officials implement a policy so deficient that the policy itself is a repudiation

12   of constitutional rights and is the moving force of a constitutional violation.  Crowley v.

13   Bannister, 734 F.3d 967, 977 (9th Cir. 2013).  A supervisor may still be liable under § 1983 by

14   promulgating, implementing, or being otherwise responsible for the continued operation of a

15   policy that "requires subordinates to commit constitutional violations," and enforcement of the

16   policy (either by the defendant-supervisor or his or her subordinates) which proximately caused

17   the plaintiff's constitutional injury. OSU Student Alliance v. Ray, 699 F.3d 1053, 1076 (9th Cir.

18   2012).  "A supervisor is only liable for constitutional violations of his subordinates if the

19   supervisor...knew of the violations and failed to act to prevent them.") Taylor v. List, 880 F.2d

20   1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011);

21   Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

22

23

24

25   Complaint -                          26              Christian Doscher, pro se
                                                  6435 Doe St. SE, Tumwater, WA. 98501
                                                          360-339-3257
                                                      barryjoneswhat@gmail.com

117.    The policy TPD were enforcing on September 14, *supra*, and September 18, *infra*, was created by Tumwater City Police Lieutenant and policy-maker Carlos Quiles, as follows:

From: Carlos Quiles <CQuiles@ci.tumwater.wa.us>
Sent: Tuesday, July 7, 2020 3:46 PM
To: ACady; BBaker; BBowers; BBrenna; BFinch; CGrimmett; CKeonitzer; CLett; CBaughn; CQuiles; CTressler; DDawson; EAnderssen; FJaeger; HDale; JHeath; JKenderesi; JKolb; JMason; JMoran; JRodriguez; JWeiks; KClark; KDriver; KFiala; LWohl; OThompson; PLong; PNavarro; RBlack; RHedinbaughn; RMize; RPatterson; RRollman; RRutledge; SBrown; SSmith; SStauffer; TBoling; TEikum; TRios
Subject: Trespassing
        Since I have been asked at least once, I would assume others may have the same question about our response to citizens refusing to wear a mask and also refusing to leave a store.  Since stores are private businesses, they have a right to refuse service to people.  Therefore, if someone has been asked to leave a store and they refuse they are then trespassing.  **The fact that the store is basing their decision on someone not wearing a mask has no bearing on them now being a trespasser**.  Be diplomatic and polite and seek voluntary compliance from individuals.  However, if someone is adamant that they will not leave the private store, then these circumstances are treated as a trespassing complaint just like all other trespassing complaints.  Arrests if made are not being made because of a mask, they are being made because someone is trespassing.
        If you have any other questions on this issue, please come speak to me.
Carlos Quiles | Lieutenant City of Tumwater Police Department
555 Israel Road SW | Tumwater, WA 98501 (360) 754-4200 |

118.    Emphasis added.  It doesn't matter that Quiles limits this policy to "private businesses": Plaintiff Doscher's allegations make it clear that the Tumwater police officers on September 14 *were still applying that policy to non-private businesses, such as the Library*.  If such application of the policy was erroneous, that's a *Monell*-based claim of "failure to train".

### COUNT 5:  DEFENDANT JON WEIKS'
### SEPTEMBER 14 VIOLATION OF 42 U.S.C. § 1983

119. TPD police chief Jon Weiks sent a letter to Plaintiff dated March 11, 2022, in which Weiks "exonerated" all police officers involved the September 14 incident and the September 18 incident:

March 11, 2022
Christian Doscher
6435 Doe St. S.E. Tumwater, WA. 98501
        Dear Christian Doscher,
        The intent of this letter is to formally notify you that the citizen complaint you submitted to the department on February 9, 2022 against Sgt. Randy Baughn, Sgt. Chuck Liska, Ofc. Stacy Brown, Ofc. Rachael Black, Ofc. James Moran, and Ofc. Danielle Dawson has been closed as "Exonerated…By department policy, an exonerated finding means: When the investigation discloses that the alleged act occurred, but that the act was justified, lawful and/or proper. .  In this case, specifically, the officers had established

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

articulable facts to contact you for the crime of trespassing on both dates.  The goal for our officers when responding to complaints such as this is ultimately for the person in question to voluntarily leave the location.  **This very approach negates the ability of our officers to conduct a "Terry Stop,"** as the officers are requesting the person to leave.  **On both dates, you were free to leave at any time.**

120. Beyond ratifying the officer's clearly illegal conduct, that letter a complete absurdity for reasons that will be discussed later.

## COUNT 6:  DEFENDANT LIBRARY'S
## SEPTEMBER 14 VIOLATION OF 42 U.S.C. § 1983

121. *participates in another's affirmative act* – a "person or corporation `causes' another `to be subjected' to the deprivation of a constitutional right ...  by…setting in motion a series of acts by others which the person knows or reasonably should know would cause others to violate the constitutional right." See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).  This standard of causation "closely resembles the standard `foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

122. The Library via Defendant Heald, supra, called the police on September 14 to have Plaintiff removed, and dishonestly insisted that Plaintiff had been asked to leave.  Thus Heald set "in motion a series of acts by others which [Heald knew or reasonably should have known] would cause others to violate the constitutional right". *Larez v. City of Los Angeles, supra*. Because the subsequent removal of Plaintiff from the Library by police constituted violation of Plaintiff's right to be free from unconstitutional seizures/arrest, the Library "set in motion" and otherwise "participated" in Defendant Tumwater's unlawfully depriving Plaintiff of constitutional rights.

Complaint -                                28                  Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

123.   *or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made* – The Library failed to tell the police on September 14 that earlier that same day it had granted Plaintiff's request for disability accommodation. Because the Library asked 911 for police-assisted trespass of Plaintiff, Library had a legal duty to disclose that it had granted Plaintiff's disability accommodation request.

124.   *Damages for Count 4* - As a direct and proximate result of Library's actions, supra, Plaintiff endured violation of his right against unconstitutional seizure, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

125.   Defendant Library's September 14 conduct, supra, was willful, deliberate, malicious and was commenced in reckless and callous disregard for Plaintiff's disability and constitutional rights.

## COUNT 7:  DEFENDANT HEALD'S
## SEPTEMBER 14 VIOLATION OF 42 U.S.C. § 1983

126.   To state a viable § 1983 claim against an individual-capacity defendant, a plaintiff must allege that the defendant, "through the official's own individual actions," caused the particular constitutional deprivation alleged. West v. Atkins, 487 U.S. 42, 48 (1988); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

127.   Defendant Heald, through her own official individual actions of complaining to the police and requesting removal of Plaintiff, caused the constitutional deprivation that resulted from the police obeying her complaint.

128.   In this context, an individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [the individual] is legally required to do that causes the deprivation".  Johnson v. Duffy,

Complaint -                                    29                    Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

588 F.2d 740, 743-44 (9th Cir. 1978) (citations omitted). Heald engaged in the affirmative act of lying to the police about Plaintiff "refusing to leave".

129.    Heald also "participated" in TPD's act of trespassing Plaintiff because she interrupted Plaintiff during his testimony to officer Baughn, lying again by denying the Library had ever accommodated his disability.

130.    Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  Heald clearly "set in motion" the acts of the TPD officers which Heald knew or reasonably should have known would cause TPD to wrongfully trespass Plaintiff from the library and thus cause the constitutional injury.

131.    A private person deprives another of a constitutional right, "within the meaning of § 1983, `if he does an affirmative act, *participates in another's affirmative act*, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty.  Sch.  Bd.  of Trs., 479 F.3d 1175, 1183 (9th Cir.2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978)).

132.    *participates in another's affirmative act* -- Plaintiff hereby incorporates by reference all previously stated facts about Heald as if fully set forth herein.  By lying to the police, Heald had set "in motion a series of acts by others which the person knows or reasonably should know would cause others to violate the constitutional right." See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).

133.    The courts have identified several tests to determine whether a private entity acts under the color of state law, including when the private person or entity acts jointly with the State

Complaint -                                              30                    Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

("joint action test"). Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir.1997). Courts look for a whether a sufficiently close nexus between the state and the challenged conduct exists to fairly attribute the conduct to the state. Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 836 (9th Cir.1999) (quoting Howerton v. Gabica, 708 F.2d 380, 383 (9th Cir.1983). The inquiry is fact specific. Id. "To be engaged in joint action, a private party must be a willful participant with the State or its agents in an activity which deprives others of constitutional rights." Brunette v. Humane Soc'y of Ventura Cty., 294 F.3d 1205, 1211 (9th Cir.2002).

134.    This is hardly debatable:  as the above shows, Heald called the police, requested removal of Plaintiff, then interrupted as Plaintiff was testifying to Officer Baughn.  Thus Heald was "engaged in joint action" as a "private party" who was a "willful participant with the State or its agents in an activity which deprives others of constitutional rights." *Brunette v. Humane, supra.*

**COUNT 8:  DEFENDANT HEYWOOD'S
VIOLATION OF 42 U.S.C. § 1983**

135.    Supervisory liability exists <u>even without overt personal participation in the offensive act</u> if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation.  *Crowley v. Bannister, supra.*

136.    Heywood admitted in several emails prior to September 14, 2021 to her part in creating and approving the policy of denying ADA accommodation requests from disabled mask-exempt persons.

137.    This policy is what led to the Library's justification for viewing Plaintiff as a trespasser and calling the police on September 14 and September 18.

Complaint -                                  31                      Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

## COUNT 9:  DEFENDANT TRUSTEES'
## VIOLATION OF 42 U.S.C. § 1983

138.    From the TRL bylaws:

ARTICLE VI
DUTIES OF THE BOARD OF TRUSTEES
**Legal responsibility for the operation of the Timberland Regional Library is vested in the Board
of Trustees.** Subject to state and federal law, the Board has the power and duty to determine
policies governing library operations and services.

139.    Under *Crowley v. Bannister, supra* the Trustees had collective supervisory authority

over Heywood, and each Trustee had, before September 14, 2021, approved and ratified the

policy of denying ADA accommodation requests from disabled mask-exempt persons.  Under

RCW 27.12.210, Library trustees have the supervision, care, and custody of all property of the

library, including the rooms or buildings constructed, leased, or set apart therefor.[4]  The board of

trustees must "Develop and implement policies that govern library services". [5]

140.    Plaintiff must await discovery to get the specifics.

141.    This policy is what led to the Library's justification for viewing Plaintiff as a

trespasser and calling the police on September 14 and September 18.

## COUNT 10:     DEFENDANT LIBRARY'S
## SEPTEMBER 18 VIOLATION OF ADA TITLE II

142. On September 18, 2021, Plaintiff's breathing disability was flaring more than it had on

September 14, therefore Plaintiff did not wear any mask at all during his September 18 visit to

the library.

143. To state a claim for monetary damages under Title II of the ADA, the plaintiff must

allege the four elements taken from Thompson v. Davis, 295 F.3d 890, 895 (9th Cir.2002),

which were given previously.

---

[4] https://wiki.sos.wa.gov/trustees/Policy.ashx
[5] https://wiki.sos.wa.gov/trustees/library-trustees-overview.ashx

Complaint -                            32                    Christian Doscher, pro se
                                                      6435 Doe St.  SE, Tumwater, WA.  98501
                                                                 360-339-3257
                                                            barryjoneswhat@gmail.com

144. *(1) the plaintiff is an individual with a disability* – previously established herein.

145. *(2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities* – Plaintiff on September 18, 2021 was a member of the general public and allowed to make use of Library services.

146. *(3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity* – On September 18, 2021 Plaintiff walked into the Tumwater TRL without wearing any mask due to his "exempt" status (under the Secretary of Health's Orders which were incorporated into Governor Inslee's Orders) and his breathing disability was flaring that day more than it had on September 14.

147. At no time on September 18 did Plaintiff violate any lawful Library policy or engage in any criminal activity.

148. Defendant Nowitz asked him to wear a mask.

149. Plaintiff explained that the Governor's Orders classified him as "exempt".

150. Plaintiff then repeatedly asked Nowitz for an ADA disability accommodation allowing him to make use of three benefits/services the Library was affording that day to non-disabled patrons (use of isolated temperature controlled room, use of electrical sockets to charge laptops, use of restrooms).

151. This is partially corroborated by the incident report Nowitz filed later that same day:

From: TRL Intranet [mailto:no-reply@sharepointonline.com]
Mari Nowitz  9/18/2021 2:32 PM
Sent: Saturday, September 18, 2021 2:33 PM
To: Chris Jordan
Subject: Patron Log A - Permalink
MN addendum:
Here is my recollection of this patron interaction -
The patron was inside the library not wearing a mask.  I asked him to wear a mask and he refused, stating that he has a medical exemption.  We went back and forth a bit - me informing him that to be inside the library

Complaint -                                    33                    Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

1   patrons need to wear masks, **him asking what kinds of accommodations we have for people who want to use the restrooms, power outlets, and temperature regulated indoor air**.

2   152. ADA requests that are solely verbal will trigger a public entity's duty to accommodate,

3   the requests need not be in written form. *Duvall v. County of Kitsap, supra*. When "the need for

4   accommodation is obvious", the public entity must conduct a fact-specific investigation to

5   determine the appropriate accommodation under the circumstances. Duvall, 260 F.3d at 1139.

6   153. Just two days before this September 18 incident, City of Tumwater acknowledged

7   through its ADA contact James Trujillo the need to investigate the disability-accommodation

8   claim of a person who could not wear a face mask:

9   RE: Mask Exemptions
    From James Trujillo <JTrujillo@ci.tumwater.wa.us>
10  To Chuck Denney <CDenney@ci.tumwater.wa.us>
    Date 2021/10/01 14:52
11  Subject: RE: Mask Exemptions
        Hi Chuck,
12      Apologies for the delay in getting back to you. As the ADA Contact for the city we do need seriously
        consider, and provide if we can, a reasonable modifications for customers with disabilities that cannot
13      wear masks. The guidance document you provided had some good examples -- see below.
        …Thanks,
        James
14      If a person with a disability is not able to wear a face mask, **state and local government agencies and
        private businesses must consider reasonable modifications to a face mask policy so that the person
15      with the disability can participate in, or benefit from, the programs offered or goods and services
        that are provided.** A reasonable modification means changing policies, practices, and procedures, if
16      needed, to provide goods, services, facilities, privileges, advantages, or accommodations to an individual
        with a disability.

17  154. Nowitz repeatedly asserted that no accommodation for Plaintiff's ADA disability

18  accommodation requests was possible.

19  155. *deliberate indifference* - At no time that day or previously did Nowitz or anybody else

20  investigate or even attempt to investigate Plaintiff's disability accommodation request.  Under

21  ADA Title II, the failure to adequately investigate needs of individuals with disabilities supports

22  a finding of the required element of deliberate indifference.  *Mark H. v. Hamamoto, supra.*

23

24

25
Complaint -                                34                    Christian Doscher, pro se
                                                                 6435 Doe St. SE, Tumwater, WA. 98501
                                                                 360-339-3257
                                                                 barryjoneswhat@gmail.com

156. Nowitz then telephoned either TPD or 911 and complained that Plaintiff was refusing to wear his mask and refusing to leave the building.

157. Officer Baughn arrived a few minutes later.

158. During that visit he noted that Plaintiff was still in the library.

159. During that visit Baughn informed Nowitz that Plaintiff's refusal to leave the library was not a crime.

160. During that visit Nowitz lied to Baughn, saying she explained to Plaintiff alternatives he could use to have access to the books and other resources the library offers, without being in the building.

161. Nowitz explained that she discussed such matters with Plaintiff because Plaintiff claimed to have a medical exemption, but declined to provide proof to the library.

162. Nowitz lied to the police: Plaintiff did not ever "decline" to provide disability-proof to the Library, because neither Nowitz nor any other TRL employee ever asked Plaintiff for any such proof in the first place on that day. And it wouldn't matter if anybody requested such from Plaintiff, as both Tumwater and Washington policy, supra, forbade a person from demanding proof of a disabled person's exempt-status.

163. During that visit Baughn informed Nowitz that she would have to specify intent to criminally prosecute Plaintiff for trespass before TPD would get involved.

164. Baughn then left the Library without confronting Plaintiff.

165. Nowitz then telephoned TRL deputy director Kendra Jones who then authorized Nowitz to tell police Nowitz intended to criminally prosecute Plaintiff for trespass.

166. Nowitz then called either TPD or 911 saying she had received authorization to criminally prosecute Plaintiff for trespass.

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

167. TPD Officers Baughn and Moran then arrived with officer Dawson as backup.

168. Baughn and Moran served Plaintiff with a Trespass Warning document containing preprinted citations to RCW 9a.52.070 and .080.

169. Plaintiff left the library without further incident.

170. *(4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability* – The 9th Circuit will find that discrimination was "by reason of" disability where facially neutral policies burden the disabled person more than non-disabled persons. In *McGary v. City of Portland, supra*. The Ninth Circuit has repeatedly recognized that where enforcement of state law would subject a person to an ADA violation, the ADA must be followed regardless. *McGary v. City of Portland; Updike v. Multnomah County; Crowder v. Kitagawa; supra.*

171. *Damages for Count 5* - As a direct and proximate result of Library's actions, supra, Plaintiff endured violation of his right against unconstitutional seizure, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

172. Defendant Library's September 14 conduct, supra, was willful, deliberate, malicious and was commenced in reckless and callous disregard for Plaintiff's disability and constitutional rights.

### COUNT 11:    DEFENDANT TUMWATER'S SEPTEMBER 18 UNREASONABLE SEIZURE,  42 U.S.C. § 1983

173. To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles, supra.*

Complaint -                                   36                     Christian Doscher, pro se
                                                                    6435 Doe St. SE, Tumwater, WA. 98501
                                                                    360-339-3257
                                                                    barryjoneswhat@gmail.com

174.  *(1) the defendant acted under color of state law* – The second time Officer Baughn arrived at the Library on September 18, he was accompanied by officer Moran and was responding to Nowitz's notification that she had fulfilled Baughn's prior request and had received authorization to criminally prosecute Plaintiff for trespass.

175.  Officer Dawson accompanied them as backup.

176.  During this September 18 visit, Officer Moran informed Plaintiff that Plaintiff was not free to disregard their commands, but must leave the library or be subject to arrest for trespass. Therefore, this confrontation constituted a real Terry stop.

177.  The Terry stop was unlawful because Baughn and Moran had visited the Library earlier that day and informed Nowitz that Plaintiff's refusal to leave the library was not a crime, as alleged supra.

178.  By saying Plaintiff's refusal to leave the library wasn't a crime, Baughn was implicating Tumwater Civil Dispute Policy 496.3(b), which says:

> (b) Members should not dismiss alleged or observed criminal violations as a civil matter and should initiate the appropriate investigation and report when criminal activity is apparent.

179.  In other words, Baughn did not "initiate the appropriate investigation and report…", because Baughn did not believe Plaintiff's *alleged* refusal to leave the Library at the request of the Library employees had constituted a criminal act.

180.  Plaintiff on September 18 did not violate any lawful policy of the Library nor did he engage in any criminal activity.

181.  *(2) the defendant deprived him of rights secured by the Constitution or federal law* – The 9th Circuit defines "not free to leave" as "he was not at liberty to ignore the police presence and go about his business." Hopkins v. Bonvicino, 573 F.3d 752, 759 (9th Cir. 2009).  "Not free to leave" does NOT mean "free to obey the police officer's command or be subject to arrest".

6435 Doe St. SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

182.   TPD's confrontation of Plaintiff on September 18 during their second visit to the library was a real Terry stop because they told him several times during aforesaid confrontation that he was not free to disregard their commands, and he must either leave the library or be subject to arrest for trespass.

183.   This is partially corroborated by an incident report authored by Defendant Nowitz that same day around 12:31 PM, discussing the same incident:

> I explained that he was being trespassed.  He asked the police if he was free to ignore me.  They explained that I was asking him to leave, that this was a trespass, **and that ignoring a trespass was a crime**.

184.   That Terry stop was unlawful in light of Baughn having told Nowitz during his prior visit that day that Plaintiff's refusal to leave was not a crime.

185.   Officer Baughn then served Plaintiff with a trespass warning document containing preprinted citations to RCW 9a.52.070 and .080.

186.   Plaintiff accepted the document, then left the library without further incident.

187.   Plaintiff's statutory defense to trespass should have been clear to Officer Baughn at the scene during this September 18 incident before demanding Plaintiff to leave the library:

> RCW 9A.52.090
> Criminal trespass—Defenses.
> In any prosecution under RCW 9A.52.070 and 9A.52.080, it is a defense that:
> …(2) The premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises;

188.   There can be no denying that at the time Plaintiff was in the Library September 18, it was open to the public.  So TPD should have known on that day that the *first* element of Plaintiff's statutory defense in RCW 9A.52.090 was fulfilled.

189.   There can be no denying that Plaintiff "complied with all lawful conditions imposed on access to or remaining in the premises", since Baughn had concluded, **despite knowing Plaintiff was "refusing to leave",** that Plaintiff had committed no crime.  In his written notes about his

Complaint -                                          38                        Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

first September 18 visit to the Library, Baughn admitted the non-criminal nature of Plaintiff's

refusal to leave the library:

> We contacted the RP (Nowitz) in the breezeway prior to contacting Christian. She confirmed she wanted him trespassed. I asked for clarification regarding the library pressing charges against Christian if he refused to leave after she informed him he was being trespassed. She said she did not know whether she had the authority to press charges on behalf of the library. I informed her of the the legislative updates; adding that we would not intervene in any **non – criminal matters** due to those restrictions.

190.    Thus TPD should have known on that day that the *second* and final element of

Plaintiff's statutory defense in RCW 9A.52.090 was fulfilled.

191.    ***Damages for Count 6*** - As a direct and proximate result of Library's actions, supra,

Plaintiff endured violation of his right against unconstitutional seizure, and endured humiliation,

indignity and loss of his right as a member of the general public to access the Library.

192.    Defendant Tumwater's September 18 conduct, supra, was willful, deliberate,

malicious and was commenced in reckless and callous disregard for Plaintiff's disability and

constitutional rights.

**COUNT 12:    DEFENDANT CARLOS QUILES'
SEPTEMBER 18 VIOLATION OF 42 U.S.C. § 1983**

193.    As alleged, under *Crowley v. Bannister, supra*, the policy TPD were enforcing on

September 18, *supra*, was created by Tumwater City Police Lieutenant and policy-maker Carlos

Quiles, as seen in the his July 7, 2020 email, quoted supra.

194.    It doesn't matter that Quiles limits this policy to "private businesses":  the Tumwater

police officers on September 18 *were still applying that policy to non-private businesses, such as

the Library*.  If such application of the policy was erroneous, that's a *Monell*-based claim of

"failure to train".

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

**COUNT 13:     DEFENDANT JON WEIKS'**
**SEPTEMBER 18 VIOLATION OF 42 U.S.C. § 1983**

195. As alleged supra, TPD police chief Jon Weiks sent a letter to Plaintiff dated March 11, 2022, in which Weiks "exonerated" all police officers involved the September 18 incident. Weiks is sued in his individual capacity, he is not quoted merely to support *Monell*-liability.

**COUNT 14:     DEFENDANT LIBRARY'S**
**SEPTEMBER 18 VIOLATION OF 42 U.S.C. § 1983**

196. ***participates in another's affirmative act*** – The Library via Defendant Nowtiz, supra, called the police on September 18 to have Plaintiff removed.  Thus Nowitz had set "in motion a series of acts by others which [Heald knew or reasonably should have known] would cause others to violate the constitutional right".  *Larez v. City of Los Angeles, supra*.  Because the subsequent removal of Plaintiff from the Library by police constituted violation of Plaintiff's right to be free from unconstitutional seizures/arrest, Nowitz had "set in motion" and otherwise "participated" in Defendant Tumwater's unlawfully depriving Plaintiff of constitutional rights.

197. ***or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made*** – The Library failed to tell the police on September 18 that on September 14 it had granted Plaintiff's request for disability accommodation.  Because the Library asked 911 for police-assisted trespass of Plaintiff, Library had a legal duty to disclose that it had previously granted Plaintiff's disability accommodation request, since that grant supported Plaintiff's defense of complying with all lawful library policies.

198. ***Damages for Count 7*** - As a direct and proximate result of Library's actions, supra, Plaintiff endured violation of his right against unconstitutional seizure, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

Complaint -                                          40                     Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

199.     Defendant Library's September 18 conduct, supra, was willful, deliberate, malicious and was commenced in reckless and callous disregard for Plaintiff's disability and constitutional rights.

### COUNT 15:     DEFENDANT NOWTIZ'S
### SEPTEMBER 18 VIOLATION OF 42 U.S.C. § 1983

200.     ***participates in another's affirmative act*** – Plaintiff hereby incorporates by reference all previously stated facts about Nowitz as if fully set forth herein.  By calling the police, Nowitz had set "in motion a series of acts by others which the person knows or reasonably should know would cause others to violate the constitutional right." See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).

201.     As the above shows, Nowitz had to call the police a *second* time to get Plaintiff trespassed because the police determined from her first call that Plaintiff's refusal to leave the Library was not a crime. Thus Nowitz was "engaged in joint action" as a "private party" who was a "willful participant with the State or its agents in an activity which deprives others of constitutional rights." *Brunette v. Humane, supra.*

### COUNT 16:     DEFENDANT JONES'
### SEPTEMBER 18 VIOLATION OF 42 U.S.C. § 1983

202.     ***participates in another's affirmative act*** – Plaintiff hereby incorporates by reference all previously stated facts about Jones as if fully set forth herein.  By authorizing Nowitz to call the police with a false story of intent to criminally prosecute Plaintiff, Jones had set "in motion a series of acts by others which the person knows or reasonably should know would cause others to violate the constitutional right." *Larez v. City of Los Angeles, supra.*

203.     Jones' authorization is the only reason Nowitz on September 18 made a second call to police to get them to trespass Plaintiff.  Thus Jones was "engaged in joint action" as a "private

Complaint -                                  41                   Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

1    party" who was a "willful participant with the State or its agents in an activity which deprives

2    others of constitutional rights." *Brunette v. Humane, supra.*

3                    **THE TERRY-STOPS TRANSFORMED INTO ARRESTS**

4    A lawful stop will be converted into an arrest, however, if the detention is effectuated in an unreasonable
     manner **or for an unreasonable length of time**.  Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996).
     For an arrest, reasonable suspicion will not suffice; the officers must have probable cause as justification for
5    their actions.
                                Macareno v. Thomas, 378 F.  Supp.  3d 933, 941 (WD Washington 2019)
6                               citing Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir. 2002)

7        204.  *unreasonable length of time* – As alleged supra, during the September 14 incident

8    Officer Baughn had concluded that Plaintiff had committed no crime, but unlawfully extended

9    the Terry stop past this point of losing his reasonable articulable suspicion, by compelling

10   Plaintiff to leave the library.  That is the point in which the Terry stop started taking up an

11   "unreasonable length of time" *(Macareno v. Thomas).*

12       205. As alleged supra, during the September 18 incident, Officers Baughn and Moran

13   demanded Plaintiff to leave the library with threat of arrest for trespass.  Thus both incidents

14   caused Plaintiff to be unlawfully "arrested" within the definition of *Macareno v. Thomas, supra.*

15       206. Tumwater will likely trifle that Plaintiff was trespassed not for a crime but for his

16   refusal to obey the Library mask policy.  That is legally frivolous, Plaintiff was "trespassed", and

17   when police "trespass" a person, they are invoking their *criminal* law enforcement authority,

18   RCW 9a.52.070 and .080.

19       207. Furthermore the officers' refusal to file a criminal report as required under Tumwater

20   Civil Dispute Policy 496.3(b) indicates they on **both** incident dates did not believe Plaintiff's

21   refusal to leave the library constituted any crime, especially the crime of "trespass".  That policy

22   is:

23       (b) Members should not dismiss alleged or observed criminal violations as a civil matter and should initiate the
         appropriate investigation and report when criminal activity is apparent.
24

25   Complaint -                          42              Christian Doscher, pro se
                                                          6435 Doe St.  SE, Tumwater, WA.  98501
                                                          360-339-3257
                                                          barryjoneswhat@gmail.com

## NO PROBABLE CAUSE

For an arrest, reasonable suspicion will not suffice; the officers must have probable cause as justification for their actions.

Macareno, 378 F. Supp. 3d at 941,
citing Gallegos v. City of Los Angeles, 308 F.3d 987, 990 (9th Cir. 2002)

208. "`[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing...that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFilippo, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). This standard is met when there is a "fair probability" that a crime has been committed. United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). On both incident dates Baughn had concluded that Plaintiff's refusal to leave the library was not a crime. Therefore he had no probable cause to extend the Terry stop past that point and turn the Terry stop into an arrest.

## NO QUALIFIED IMMUNITY

209. "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016). "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, **not only those that support his claim, but also those that defeat the immunity defense**." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). "If the operative complaint `contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiff[ is] `entitled to go forward' with [his] claims." Keates v. Koile, 883 F.3d 1228, 1235 (9th Cir. 2018). Courts view the facts in the light most favorable to the plaintiff to determine whether

Complaint -                                    43                       Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

the evidence shows the defendant's conduct violated a constitutional right.  Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).

210.  Because Baughn on both occasions had concluded Plaintiff had not committed any crime, and because neither Baughn nor any other police officer subsequently filed a criminal "report" as required in Tumwater Civil Dispute Policy 496.3(b), supra, the only area of "law" that TPD could possibly pretend was "unsettled" for purposes of pleading reasonable ignorance of the law would be

    a)  In a situation where there is only one suspect charged with trespass, can the police be reasonable to continue detaining the suspect *after* the police conclude suspect has committed no crime (!?)

    b)  In a situation where there is only one suspect charged with trespass, can the police be reasonable to *arrest* a suspect without probable cause (!?)

211.  The questions obviously answer themselves.  Whatever "law" applies here, is exceptionally well-settled.

212.  To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent prongs: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." Castro v. Cnty. of L.A., 797 F.3d 654, 663 (9th Cir. 2015) (citing Pearson, 555 U.S. at 232).  Either prong may be considered first. Id. (citing Pearson, 555 U.S. at 236).

213.  *(1) whether the officer's conduct violated a constitutional right* – Police are required to terminate a Terry stop after concluding there is no crime:

> We may assume that the officers were justified in initiating an investigatory stop of the teenagers after they spotted what they believed to be a gun in G.S.'s hand.  The police determined almost immediately after approaching G.S., however, that the gun was, in fact, a toy, **and at that point any suspicion that the teenagers were engaged in a crime dissipated**… In sum, once the officers determined that the item in G.S.'s hand was a

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

toy, no officer of "reasonable caution" would have had any reason to believe that G.S., T.O.S., and B.F. were …otherwise engaged in unlawful activity. Accordingly, taking the facts in the light most favorable to the plaintiffs, the officers violated the constitutional rights of G.S., T.O.S., and B.F. when they arrested them.

*Sialoi v. City of San Diego*, 823 F. 3d 1223, 1233 (9ᵗʰ Cir. 2016)

214. On both September 14 and September 18, Officer Baughn concluded that Plaintiff had committed no crime, so a reasonable officer would have known that suspicion that Plaintiff's refusal to leave the library was a crime, was a suspicion which had thus "dissipated" (*Sialoi, supra*), and thus the Terry stop would have to be terminated at that point.

215. Where no facts specific to the arrestees establish probable cause, officers may not rely on general background facts to immunize themselves from suit. See Crowe v. Cty. of San Diego, 608 F.3d 406, 439 (9th Cir. 2010) (holding that it is clearly established that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person" (emphasis added) (quoting Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979))). An individual's peaceful, verbal challenge to police action is not in itself a valid basis for extending a Terry stop past the point of concluding suspect is not a criminal. Mackinney v. Nielsen, 69 F.3d 1002, 1006-07 (9th Cir. 1995)(noting that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state" (quoting City of Houston v. Hill, 482 U.S. 451, 462-63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

216. *(2) whether that right was clearly established at the time of the incident* – "Clearly established" must not be defined "at a high level of generality," but rather it "must be particularized to the facts of the case." White v. Pauly, ___ U.S. ___, 137 S.Ct. 548, 552 (2017). Exactly how "established" are the 4ᵗʰ Amendment rights of **_non_**-criminals to be free from unlawful seizures/arrests?

Complaint -                    45                    Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

…it has long been clearly established that it is unlawful to conduct an investigatory stop…unsupported by reasonable suspicion.

Sialoi, 823 F. 3d at 1237

217. "…the defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011).

218. TRL was a Tumwater-owned building with TRL being open to the public at the time of both incidents. It was not a private business.

219. An officer is not entitled to a qualified immunity defense where exculpatory evidence is ignored that would negate probable cause. Kuehl v. Burtis, 173 F.3d 646, 651 (8th Cir.1999). Baughn on September 18 ignored Plaintiff's disability status, which was key since it was precisely Plaintiff's disability status which exculpated Plaintiff from the Library's accusations of trespass.

## DEFENDANT TUMWATER'S *MONELL*-LIABILITY

## FOR DEFENDANT LIBRARY'S MASK-POLICY

"Allegations of Monell liability will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur."
Lucas v. City of Visalia, No. 1:09-CV-1015AWIDLB, 2010 WL 1444667, at *4 (E.D. Cal. Apr. 12, 2010)

220. The TRL building where these two September 2021 incidents occurred was, on those dates, owned by the City of Tumwater.

221. *(1) identify the challenged policy/custom –*

> ❶ **Face Masks Required**
>
> Starting August 13, regardless of vaccination status all staff and patrons (5 and older) must wear a mask inside any Timberland Libraries.
>
> Empezando el 13 de agosto, sin importar el estado de vacunación, todos los empleados y usuarios (mayores de 5 años) necesitan usar cubrebocas adentro de la biblioteca.

Complaint -                                   46                   Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

222.    *(2) explain how the policy/custom is deficient* – As the prior allegations show, this mask policy was so absolute, it freed TRL from its obligations under the federal ADA to investigate and grant reasonable disability accommodation requests.

223.    The policy was also contrary to Governor Inslee's own interpretation of his own mask-mandate, which gave the Library only two options when confronted by a maskless person declaring themselves to be 'exempt' from the mask-mandate: (1) provide a feasible alternative, or if none is possible (as was the case here),  (2) allow the customer to enter.  See *Updated COVID-19 Facial Covering Guidance, supra.*  Plaintiff reasonably sought use of library's temperature controlled rooms, restrooms and electrical sockets for charging laptops.  No alternative was possible, therefore, under the *Guidance.pdf, supra,* Library's only option was to allow Plaintiff to enter.

224.    *(3) explain how the policy/custom caused the plaintiff harm* – The policy required the Library to deny reasonable ADA-based accommodation requests from mask-exempt breathing-disabled patrons like Plaintiff.

225.    *(4) reflect how the policy/custom amounted to deliberate indifference* -   The TRL mask policy was so absolute that TRL literally believed it relieved them of their obligation under the ADA to grant reasonable disability accommodation requests.

226.    The Library's bringing check-out materials and books to the front door for mask-exempt disabled patrons did not come close to fulfilling the law:  The ADA requires more than physical access to public entities: it requires public entities to provide "meaningful access" to their services.  Chaffin v. Kansas State Fair Bd., 348 F.3d 850, 857 (10th Cir.2003); see also Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir.1999)  There is no possibility of "meaningful access" to the Library's *temperature controlled rooms, its restrooms and its electrical sockets for*

Complaint -                                         47                    Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

1    *patrons to charge laptops*, if the Library policy simply stopped mask-exempt people dead at the

2    front door of the building.

### DEFENDANT TUMWATER'S *MONELL*-LIABILITY

### FOR TUMWATER'S TERRY-STOP POLICY

227.    *(2) explain how the policy/custom is deficient* – the policy at issue is the policy of

Carlos Quiles, supra, namely, that Tumwater had a policy of taking Quiles' policy on dealing

with maskless customers refusing to leave a *private* business, and enforcing it when dealing with

maskless customers refusing to leave a *public* business in a public building.

228.    To determine whether a seizure was justified by a reasonable suspicion, the Court

must "consider whether, in light of the totality of the circumstances, the officer had `a

particularized and objective basis for suspecting the particular person stopped of criminal

activity.'" Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 185 (2004) (quoting United States

v. Cortez, 449 U.S. 411, 417-18 (1981)); see also Terry v. Ohio, 392 U.S. 1, 30 (1968). The

"totality of the circumstances" may include an officer's "objective observations, information

from police reports, if such are available, and consideration of the modes or patterns of operation

of certain kinds of law-breakers." United States v. Berber-Tinoco, 510 F.3d 1083, 1087 (9th Cir.

2007).

229.    The policy was deficient because as alleged, supra, the policy caused the officers to

ignore facts available at the scene clearly supporting both elements of Plaintiff's statutory

defense to trespass, RCW 9A.52.090.

230.    Quiles' policy only requires officers to verify that the owner or manager has

requested the customer to leave and verify the customer is not leaving. Quiles' policy does not

require officers to investigate to see whether the suspect in the place open to members of the

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

public complied with all lawful conditions imposed on access to or remaining in the premises. Quiles' policy simply assumes that the owner's or manager's expression of desire for suspect to leave is the end of the story, period, and suspect must either leave or be arrested.

231.    That policy is deficient because a) as we see herein, sometimes the claim of having told a suspect to leave is false, and that means officers lack authority to make him leave (*Larsen v. Fort Wayne Police Dept, supra*), and b) examination of the totality of circumstances may possibly indicate that the only reason the owner/manager wants suspect to leave is because owner/manager does not want to comply with the ADA...which is also what happened here. Should police discover such illegal motive, they would be forced to either take no action, or concede that they are knowingly aiding and abetting a violation of the ADA.

232.    Quiles' policy was deficient because on both days of these incidents City of Tumwater's own webpage acknowledged that persons with certain disabilities are "exempt" from the mask-wearing requirement, and yet Quiles' policy makes no express or implied exceptions for mask-exempt customers.

233.    Quiles' policy also made no room for officers to consider the suspect's side of the story, meaning the policy encourages the officer's to violate their duty under *Peng v. Mei Chin Penghu; Florida v. Royer; US v. Manzo-Jurado, supra* to get the suspect's side of the story. Once again, if the owner indicates he wants the suspect gone, it's case closed, and the suspect either leaves or gets arrested, end of story.  This policy of considering only the owner's/manager's request for suspect to leave squarely contradicts well-settled 9th Circuit precedent that an officer must not ignore exculpatory evidence.  Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003), citing Kuehl v. Burtis, 173 F.3d 646, 651 (8th Cir.1999).  "The reasonable suspicion "standard takes into account `the totality of the circumstances — the whole picture,'",

Tate v. Smith (WD Washington, Feb. 28, 2020), quoting Navarette v. California, 572 U.S. 393, 397 (2014). Obviously, testimony from the suspect as to why he is refusing to leave is part of the "whole picture". Here, Plaintiff's failure to wear a mask was TRL's *__sole__* declared motive for allegedly asking him to leave.

234.    Officer Thompson's January 2021 memo to Jay Mason concerning Thompson's trespassing Plaintiff from a Fred Meyer store in 2020 admitted that Thompson tried to avoid the mask-issue, i.e., he tried to avoid something within the "whole picture", thus Quiles' deficient policy was in operation more than 6 months prior to these September 2021 incidents.

235.    The aforementioned customs were the moving force and/or proximate cause of the September 14 and September 18 deprivations of Plaintiff's clearly-established and well-settled constitutional rights.

**TUMWATER'S MONELL-LIABILITY UNDER ALL FOUR THEORIES**

236. Four theories of municipal liability are given in Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); see also City of Canton v. Harris, 489 U.S. 378 (1989). A single unprecedented decision can possibly support Monell liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).

237.    *(i) a policy or longstanding practice or custom from which the alleged constitutional violation resulted* - A local government may be held liable for "an expressly adopted official policy." Lytle v. Carl, 382 F.3d 978, 982 (9th Cir.2004). A "policy" is a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir.2008); Long, 442 F.3d at 1185. Stated differently, a custom is a widespread and longstanding practice that "constitutes the standard operating procedure of

Complaint -                                       50                          Christian Doscher, pro se
                                                                                6435 Doe St. SE, Tumwater, WA. 98501
                                                                                            360-339-3257
                                                                                      barryjoneswhat@gmail.com

1    the local government entity." Trevino, 99 F.3d at 918; Gillette v. Delmore, 979 F.2d 1342, 1346-

2    47 (9th Cir.1992).

3        238. The requisite elements of a § 1983 claim based on a policy, practice, and custom are

4    that: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom;

5    (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right;

6    and (4) the policy or custom was the moving force behind the constitutional violation.  Mabe v.

7    San Bernardino Cnty., Dep't of Pub.  Soc.  Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2001); see

8    also Edgerly v. City and County of San Francisco, 599 F.3d 946, 960 (9th Cir. 2010).

9        239. *(1) the plaintiff was deprived of a constitutional right* – previously established.

10       240. *(2) the entity had a policy or custom* – There are three policies at issue:  the Library's

11   illegal mask policy, supra;  Tumwater PD's trespassing-policy from Quiles which disregards the

12   totality of circumstances, supra:  and the Tumwater PD's policy of extending Quiles' policy to

13   trespassing incidents involving non-private businesses such as the Library, supra.

14       241.  *(3) the policy or custom amounted to deliberate indifference to the plaintiff's*

15   *constitutional right* – this was previously established herein.  "It is not sufficient for a plaintiff to

16   identify a custom or policy, attributable to the [entity], that caused his injury.  A plaintiff must

17   also demonstrate that the custom or policy was adhered to with `deliberate indifference to the

18   constitutional rights of [the jail's] inhabitants.'" Castro v. County of L.A., 833 F.3d 1060, 1076

19   (9th Cir. 2016) (en banc) (quoting City of Canton v. Harris, 489 U.S.  378, 392 (1989)).

20       242. Officer Baughn during his September 14 interaction with Plaintiff inside the Library

21   said the Library has a right to refuse service.  Plaintiff asked "based on my medical disability"?

22       243. *Officer Baughn replied "right".*  So apparently Defendant Tumwater takes the patently

23   frivolous position that a patron's *disability* gives the Library a right to *refuse* service (!?).

24

25

Complaint -                                51                    Christian Doscher, pro se
                                                          6435 Doe St.  SE, Tumwater, WA.  98501
                                                                    360-339-3257
                                                          barryjoncswhat@gmail.com

244.  *(4) the policy or custom was the moving force behind the constitutional violation* – This was previously established herein.

245. *pattern or practice* - To prevail on a pattern and practice claim, plaintiff must prove "the existence of a widespread practice that ...  is so permanent and well settled as to constitute a `custom or usage' with the force of law." Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir.1992) (quoting City of St.  Louis v. Praprotnik, 485 U.S.  112, 127 (1988)).  The policy of Quiles, supra, was being enforced against Plaintiff more than 6 months earlier during the December 21, 2020 incident (documented in *Doscher v. Kroger, NO.  3:21-cv-05255-BHS*) and twice again in the September 14 and September 18 incidents at issue in the instant Complaint. Such policy is clearly "well-settled".

246. *trespassed despite various alternatives* - Liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S.  469, 483 (1986).  Baughn concluded during both September 14 and September 18 incidents that Plaintiff had committed no crime, so his choice to move forward and trespass Plaintiff both times anyway was a choice to follow a course of action despite his knowing that the alternative of simply leaving Plaintiff alone was available.

247. It would be absurd to suggest TPD was "required by law" to trespass Plaintiff:  that would logically require that the obligation upon TPD to trespass persons is so absolute, they are required to effect trespass *even when doing do would constitute their knowingly aiding and abetting violations of the ADA...(!?)*

248. *(iii) ratification by an official with final policy-making authority of a subordinate's unconstitutional conduct* – When a Police Chief exonerates an officer in answer to a citizen

Complaint -                                        52                    Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

complaint of police misconduct, the 9th Circuit finds the Chief has "ratified" such conduct.  See

Trevino v. Gates, 99 F.  3d 911, 921 (9th Cir. 1996), citing Larez v. City of Los Angeles, 946

F.2d 630, 645-48 (9th Cir.1991). "To show ratification, a plaintiff must prove that the

`authorized policymakers approve a subordinate's decision and the basis for it.'" Christie v. Iopa,

176 F.3d 1231, 1239 (9th Cir.1999) (quoting City of St.  Louis v. Praprotnik, 485 U.S.  112, 127,

108 S.Ct.  915, 99 L.Ed.2d 107 (1988)).  "We have found municipal liability on the basis of

ratification when the officials involved adopted and expressly approved of the acts of others who

caused the constitutional violation." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir.1996).

249.  TPD police chief Jon Weiks sent a letter to Plaintiff dated March 11, 2022, in which

Weiks "exonerated" all police officers involved the September 14 incident and the September 18

incident:

March 11, 2022
Christian  Doscher
6435 Doe St.  S.E.  Tumwater, WA.  98501
    Dear Christian  Doscher,
    The intent of this letter is to formally notify you that the citizen complaint you submitted to the department
    on February 9, 2022 against Sgt.  Randy Baughn, Sgt.  Chuck Liska, Ofc.  Stacy Brown, Ofc.  Rachael
    Black, Ofc.  James Moran, and Ofc.  Danielle Dawson has been closed as "Exonerated…By department
    policy, an exonerated finding means: When the investigation discloses that the alleged act occurred, but
    that the act was justified, lawful and/or proper. .  In this case, specifically, the officers had established
    articulable facts to contact you for the crime of trespassing on both dates.  The goal for our officers when
    responding to complaints such as this is ultimately for the person in question to voluntarily leave the
    location.  **This very approach negates the ability of our officers to conduct a "Terry Stop,"** as the
    officers are requesting the person to leave.  **On both dates, you were free to leave at any time.**

250.  Beyond ratifying the officers' clearly illegal conduct, that letter is a complete absurdity

for reasons that will be discussed later.

251. *failure to train* - "A pattern of similar constitutional violations by untrained employees

is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."

Connick v. Thompson, 563 U.S.  51, 62 (2011).  "[I]n a narrow range of circumstances, a pattern

of similar violations might not be necessary to show deliberate indifference." Id at 63.  "[T]he

Complaint -                                    53              Christian Doscher, pro se
                                                          6435 Doe St.  SE, Tumwater, WA.  98501
                                                                    360-339-3257
                                                              barryjoneswhat@gmail.com

1  unconstitutional consequences of failing to train could be so patently obvious that a [city] could

2  be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, at 64.

3  Plaintiffs must show that Tumwater "was deliberately indifferent to the need to train

4  subordinates, and the lack of training actually caused the constitutional harm or deprivation of

5  rights." Id.  The pattern exists:

6  252. *Quiles* - he created the policy July 2020, see email, supra.

7  253. *Oran Thompson* – As alleged supra, Officer Oran Thompson was enforcing Quiles'

8  illegal policy back in December 2020, which resulted in the now pending lawsuit *Doscher v.*

9  *Kroger, et al.*  Thompson then wrote a responsive "memo" to Tumwater Police Commander Jay

10  Mason, in which Thompson admitted he tried with great effort to avoid discussing the "mask

11  issue" with Plaintiff.  That is, *he tried to avoid the totality of circumstances*.

12  254. *Mason* – TPD Commander Jay Mason then replied to Plaintiff in a 2021 letter saying

13  Tumwater Police had "exonerated" Thompson via a finding that the conduct was legally

14  justified.

15  255. *Baughn* – As alleged supra, Baughn believed the policy authorized him to remove

16  maskless persons who refuse to leave *even if Baughn himself has concluded they are committing*

17  *no crime (!?)*.  Furthermore, Baughn on September 18 had first refused to confront Plaintiff in

18  answer to Nowitz's 911 call.  If that was because Baughn was sure Plaintiff hadn't committed a

19  crime, his later trespassing Plaintiff anyway makes Baughn's guilt clear.  If Baughn's reasons for

20  not confronting Plaintiff was that he was unsure whether Plaintiff was trespassing or not, this

21  indicates Tumwater's failure to train.

22

23

24

25

Complaint -                                   54                        Christian Doscher, pro se
                                                                 6435 Doe St. SE, Tumwater, WA. 98501
                                                                              360-339-3257
                                                                     barryjoneswhat@gmail.com

256. *Moran* -  As alleged supra, Officer Moran accompanied Baughn during the second September 18 visit, so Moran was also not properly trained to recognize when a complaint of trespass is true or false.

257. *Weiks* – Weiks' March 11 exoneration letter, supra, states at least two falsehoods proving that the Tumwater Chief of Police is shockingly ignorant of the law applicable to these two incidents, which implies not only Tumwater's failure to train *him*, but by extension failure to train his *subordinates*, since the Court would assume Chief Weiks is at least somewhat more knowledgeable about criminal law enforcement and "trespass" in particular, than his subordinates.  First, Weiks' letter denies that the officers conducted a Terry stop, when in fact Plaintiff has established herein that on both incident dates TPD subjected Plaintiff to a Terry stop with expressions or implications that Plaintiff would be arrested if he did not comply.

258. Second, it was established herein that because the Terry stops were extended past the point the officers lost whatever reasonable articulable suspicion they may have previously acquired, the stops constituted "arrests".  *Macareno v. Thomas, supra.*

259. Because the policy Plaintiff complains of is a failure to train, he must show that (1) he was deprived of a constitutional right, (2) the City had a training policy that "`amounts to deliberate indifference to the [constitutional] rights of the persons' with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the City properly trained those officers.  See Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir.2001)(quoting City of Canton v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

260. *deprived of a constitutional right* – previously established.

261. *policy of deliberate indifference* – previously established.

Complaint -                                        55                          Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

262. ***deliberately indifferent to the need to train subordinates*** – previously established. This indifference is collectively inferred also from the fact that as alleged, supra, TPD did not understand that a) Terry stops must be terminated after reasonable articulable suspicion dissipates, b) arrest requires probable cause, c) Quiles' policy was limited to private businesses, but interpreted by police as applicable to non-private businesses, d) Weik's exoneration letter indicating Weiks absurdly thought Plaintiff was "free to leave" during both incidents, when in fact "free to leave" is not defined as "free to obey the officer's command". *Hopkins v. Bonvicino, supra.*

263.   ***(3) his constitutional injury would have been avoided had the municipality properly trained those officers*** - had Tumwater properly trained its officers, they would not have so blindly presumed that every case of a customer refusing to wear a mask and refusing to leave when asked, constitutes unlawful trespass.  Proper training would have taught TPD that the owner's or manager's request for suspect to leave is not the end of the story:  that request might be motivated solely by unwillingness to obey the ADA, in which case TPD would recognize that fulfilling the owner's/manager's request would necessarily involved TPD in aiding and abetting an ADA violation.

264. ***The lack of training actually caused the constitutional harm or deprivation of rights*** –

265. Tumwater has never "trained" its officers on how to detect when a requested trespass is arising solely from the business owner's or operator's violation of the ADA.  Tumwater believes that mangers of private and public businesses have an equally absolute right to make any customer or patron leave, regardless of reason.

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

1

## COUNT 17:   CONSPIRACY OF ALL DEFENDANTS, 42 U.S.C. § 1983

2

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Vieux v.

3

East Bay Reg'l Park Dist., 906 F.2d 1330, 1343 (9th Cir.1990) (citation and internal quotation marks omitted). To prove a civil conspiracy, the plaintiff must show that the conspiring parties "reached a unity of purpose or a

4

common design and understanding, or a meeting of the minds in an unlawful arrangement." Id. (citation and internal quotation marks omitted). "To be liable, each participant in the conspiracy need not know the exact

5

details of the plan, but each participant must at least share the common objective of the conspiracy." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989) (en banc). A defendant's

6

knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. See United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir. 1987) (involving a criminal conspiracy).

7

Gilbrook v. City of Westminster, 177 F. 3d 839, 856 (9th Cir. 1999)

8

266.  In the context of conspiracy claims brought pursuant to section 1983, a plaintiff must

9

"allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v.

10

County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police

11

Dep't, 839 F.2d 621, 626 (9th Cir. 1988).  A claim of conspiracy requires a plaintiff to

12

"demonstrate the existence of an agreement or `meeting of the minds' to violate constitutional

13

rights." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999)

14

(citations omitted).  The elements of § 1983 civil conspiracy are found in Avalos v. Baca, 596

15

F.3d 583, 592 (9th Cir.2010).  A plaintiff cannot be required to plead with specificity the very

16

facts that can only be proven by circumstantial evidence. College Hills Corp., 91 Ill.2d at 146, 61

17

Ill.Dec. 766, 435 N.E.2d 463.  Because conspiracies are "purposefully shrouded in mystery,"

18

they "do not permit the plaintiff to allege, with complete particularity, all of the details of the

19

conspiracy or the exact role of the defendants in the conspiracy." Adcock v. Brakegate, Ltd., 645

20

N.E.2d 888, 895 (Ill. 1994).  A defendant's knowledge of and participation in a conspiracy may

21

be inferred from circumstantial evidence and from evidence of the defendant's actions. See

22

United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir. 1987).

23

24

25

Complaint -                    57              Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

267.  *(1) the existence of an express or implied agreement among the defendants to deprive him of his constitutional rights* – Between March 2020 and September 19, 2021, TRL and TPD agreed that adult Library patrons could be subjected to Terry stops, arrests and trespassing for not wearing masks and for refusing to leave *regardless of medical exemption or disability-request*.

268.  They also agreed that Terry stops, arrests and trespasses in such circumstances did not involve criminal conduct.

269.  Defendant TPD's police officers between 2015 and 2022 told TRL employees at least once that unless TRL was willing to lie about the reason they were calling 911, the real reason for calling 911 might not be sufficient to trigger actual police involvement.

270.  An example of this actually happening is Defendant Heald's September 14 lying to the police saying they had asked Plaintiff to leave, and officer Baughn's refraining from asking Plaintiff whether anybody had asked Plaintiff to leave.  Another example is Nowitz and Jones on September 18 pretending to desire prosecution of Plaintiff merely to convince TPD to change its mind, come back to the library and trespass Plaintiff.

271.  *(2) an actual deprivation of those rights resulting from that agreement* – This has already been established, and is made glaring by officer Baughn's removal of Plaintiff from the Library on both incident dates *despite previously concluding, on both incident dates,  that Plaintiff's refusal to leave was not a crime.*

272.  All Defendants involved in the conspiracy were motivated by a discriminatory animus against disabled mask-exempt persons, since the library mask policy was rigid in a way that would only negatively impact those disabilities qualifying them as mask-exempt.

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

**COUNT 18:     CONSPIRACY OF
LIBRARY,  42 U.S.C. § 1983**

273.  Defendant Heywood had supervisory authority in TRL and forwarded the "no mask, no entry" policy to several other TRL staff and others in an August 3, 2020 email entitled "RE: [publibdir] Hard line on wearing masks".

274.  In another email on the same date with same subject line, TRL employee Eric Lowell said to Heywood:

> I really think that we should have a sign like the ones I saw everywhere in Vegas, No Shirt, No Shoes, No Mask, No Service.  People are accustomed to the first two, and I think it makes a good point.

275.  Heywood then replied to this email on the same day saying "I totally agree".

276.  In an October 23, 2020 email to Jones, Erica McCaleb suggested a policy of "No one in the building without a mask".

277.  In a November 14, 2020 email, TRL policy-maker Matthew Van Norman said

> From: Matthew Van Norman [mailto:mvannorman@trl.org]
> Sent: Saturday, November 14, 2020 4:30 PM
> To: Cristal Splitter
> Subject:
>
> Mask Requirements
> Facemasks are required inside the building. No exceptions. However, I'm inclined to give everyone a fresh start now that we've begun new procedures.
> Going forward, use the inform/warn/trespass protocol.
>    1.    Inform patrons that they must wear masks in the lobby. (Faceshields alone are insufficient.) Patrons who can't wear or won't wear masks can call in their orders, and we'll deliver their items outside. Add a comment to the patron record (NO MASK: INFORMED - XX@YE 11/18/2020).
>    2.    Warn patrons for second violations. Service will be denied for non-compliance. Add a comment to the patron record (NO MASK: WARNED - XX@YE 11/19/2020).
>    3.    Trespass patrons on third violations. Fulfill orders but notify patrons they will be prohibited from all TRL branches for at least a week. Add a comment (NO MASK: TRESPASSED UNTIL 11/27/2020 - XX@YE 11/20/2020).
>     Subsequent violations will result in longer trespass periods.
>     For patrons who assert medical exemptions or volunteer that they won't wear masks, add a comment to alert Phones staff (NO MASK: OUTSIDE PICKUP - XX@YE 11/18/2020).

278.  It should be clear from the above that even if Plaintiff had been wearing a face shield, TRL would still have denied him entry.  This policy was confirmed one year later:

> From: Erica McCaleb [mailto:emccaleb@trl.org]

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

Sent: Wednesday, August 25, 2021 4:55 PM
To: Kendra Jones; Holly Paxson; Linda McKinnie; Nicole Thode; Stephanie Hope-Cochran; Juliet Lawson-Hall
Subject:

Hello! With the re-instated mask mandate we are again playing the "does this count?" game with folks. Just to double check:

**Face shield - no**
Face shield with hood - yes
Molded plastic face mask - no?
Neck gaiter - yes
Cloth face mask - yes
A scarf fashioned into a face mask - maybe?
A handkerchief - yes?
Does this match up to what you all are enforcing?

279.  In a November 23, 2020 email Jones said:

I am not aware of any changes to the mask mandate November 16 updates only added service restrictions to some categories of businesses/orgs. The mask mandate gives curbside as an accommodation for any who are not able to wear a mask and, therefore, cannot enter the building. TRL enforced a stricter restriction saying that we do not want to serve patrons, even at takeout, if they are not wearing a mask. We can do this UNLESS a patrons specifically says they have a medical exemption. If they say they have a medical exemption we can give them their materials but can required them to step far away from the table/service outlet and only retrieve their items after staff are gone from the area. If they do not follow that direction, they do not receive their items.

280.  In a December 3, 2020 email Jones approved of a policy created by North Mason

Chambers, also approved by the North Mason TRL, which required TRL staff to be "vigilant" in

refusing entry to disabled mask-exempt patrons,

Mary is right- this message from the Chamber was interesting. It's good to know they are serious about it and encouraging businesses to be, as well.
Kendra Jones
Deputy Director
kjones@trl.org
(360) 704-4554
www.trl.org
she/her

From: Mary Halterman
Sent: Tuesday, December 1, 2020 9:55 AM
To: North Mason <NorthMason@trl.org>
Cc: Jessica Friberg <jfriberg@trl.org>; Kendra Jones <kjones@trl.org>
Subject: Fw: Coronavirus Enforcement Update
I thought this was a very interesting email from the Chamber regarding mask mandate fines. Thank you for always asking patrons to wear masks and following up as needed.
Mary Halterman (she/her)
Library Manager
North Mason Timberland LIBRARY
Phone: 360.275.3232
mhalterman@trl.org

Complaint -                                    60                    Christian Doscher, pro se
                                                                    6435 Doe St. SE, Tumwater, WA. 98501
                                                                    360-339-3257
                                                                    barryjoneswhat@gmail.com

1    Visit us at TRL.org

2    --------------------------------------------------------------------------------

3    From: Pam Volz <pvolz@northmasonchamber.com>
     Sent: Monday, November 30, 2020 11:19 AM
     To: Mary Halterman <mhalterman@trl.org>
     Subject: Coronavirus Enforcement Update

4
     Dear Members & Colleagues,
5    We want to assure you that the Chamber takes the health and well-being of our community, members, and
     customers very seriously. Like you, we're closely monitoring the rapidly changing restrictions and guidelines
6    related to the Coronavirus (COVID-19) pandemic.

7    Many of you have already implemented strong safety protocols such as requiring staff, visitors, and customers
     to wear masks and maintain social distancing. However, some in our community have not enforced these state
     mandates and we are aware of businesses who have received fines of as much as $10,000.
8
     Although the guidelines suggest that you do not argue with customers who refuse to wear a mask, we encourage
9    you to remain vigilant. Over the upcoming week, we have been informed that secret shoppers and undercover
     persons will be checking to make sure that you are enforcing the rules and enforcing state guidelines. We know
     that mistakes happen, but we want to make sure that you are advised and aware of the penalties.
10
     We are all in this together. The Chamber will continue to monitor the COVID-19 situation and will follow
11   guidance from public health officials and government agencies, so we can continue to support our members and
     the community as much as possible.
12
     This holiday season, we are grateful for many blessings - including you. Thank you for following guidelines,
     enforcing safety measures, and doing your part to get us past this recent surge and move towards rebuilding a
13   healthy local economy.

14   Sincerely,

15   Pam Volz
     North Mason Chamber
16   northmasonchamber.com
     360.275.4267

17   281.  In an email of the same date, Heywood agreed with that policy.

18   282.  In a May 13, 2021 email, TRL employee Erica McCaleb confirmed that TRL still

19   requires masks for patrons:

20   From: Erica McCaleb [mailto:emccaleb@trl.org]
     Sent: Thursday, May 13, 2021 12:56 PM
21   To: 28:0af95b67-5890-4306-9c1c-a8591cead09e; Kristina Kauffman; Matthew Van Norman; Elizabeth Kalen;
     Mike McGowan; Stefan Abuan; Cynthia Thurow; Trina Folley; Mary Clark; Judy Taylor; Cristal Splitter
22   Subject:
     Wanted to share this news with you all because I am sure we will receive questions, nothing has changed for us
     yet as we are still under a statewide mask mandate, and TRL still requires masks for library visitors.
23

24

25
     Complaint -                              61                    Christian Doscher, pro se
                                                                    6435 Doe St.  SE, Tumwater, WA.  98501
                                                                          360-339-3257
                                                                    barryjoneswhat@gmail.com

283.   In a May 13, 2021 email Jones admitted that the TRL mask policy should be followed because in spite of some customers complaining of rights-violations, "the good outweighs the bad".

From: Amy Lee [mailto:alee@fvrl.org]
Sent: Monday, May 10, 2021 11:25 AM
To: Kendra Jones <kjones@trl.org>
Subject: Library Reopening
*...3) What are your experiences like so far?* [response from Jones:]Great! We have seen a very slight uptick in patron behavior incidents but it's still nothing like it was pre-pandemic. Patrons have by and large been gracious, kind, and willing to follow all staff direction. Being in many rural conservatives counties, of course, means we do see plenty of folks who want to argue with us about the mask mandate or tell us we're violating their rights, etc. They are no fun when they happen but staff have managed marvelously **and the good still outweighs the bad**.

284.   In a May 17, 2021 email, Jones admits that the TRL policy remains in force:

From: Kendra Jones
Sent: Monday, May 17, 2021 9:15 AM
To: Amy Lee
Subject: RE: Library Reopening
Hi Amy-
Yes, those CDC guidelines really threw a wrench in our plans, as well. We have decided to move ahead to getting out libraries all in Phase 3 asap. My philosophy is that we should make the mask conversation the only negative one, if we can help it. We will still require masks but at least now staff won't also have to tell people "no" to all the other things we haven't allowed. We have, unfortunately, already seen an increase in mask confrontations. They didn't even wait a day to start insisting we were breaking laws, which, of course, we are not. L&I is still requiring masks and their requirements supersede CDC.

285.   Apparently Jones didn't know about conflict-preemption, which means the federal ADA must be obeyed *even where doing so would violate a State health directive*.

286.   In a May 20, 2021 email, TRL employee Brenda Lane admits intent of the Union to discuss what to do if the mask-mandate is lifted:

From: Brenda Lane [mailto:blane@trl.org]
Sent: Thursday, May 20, 2021 9:48 AM
To: Andrea Heisel; Cheryl Heywood; Kendra Jones; Rose Enos-Weedmark
Subject:

Just met with the Union.  For UMC, we are going to go quickly through their list.  Mostly they wanted to celebrate some of the things that we have all accomplished and wanted to just say good job.  The thing that we will mostly focus on is having a discussion on what we will be doing if the mask mandate comes off.

287.   In a May 21, 2021 email, TRL employee Mary Clark required the TRL mask-policy to remain in place:

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

From: Mary Clark [mailto:mclark@trl.org]
Sent: Friday, May 21, 2021 2:58 PM
To: 28:0af95b67-5890-4306-9c1c-a8591cead09e; Kristina Kauffman; Matthew Van Norman; Erica McCaleb;
Elizabeth Kalen; Mike McGowan; Stefan Abuan; Cynthia Thurow; Trina Folley; Judy Taylor; Cristal Splitter;
Audrey Grey
Subject:
There are exemptions for certain places. So that mask mandate stays in place. Schools being one of them.
Libraries aren't mentioned

288.  In a June 1, 2021 email, Hannah Hollander said

From: Hannah Hollander [mailto:hannahh@council2.com]
Sent: Tuesday, June 1, 2021 2:41 PM
To: Rose Enos-Weedmark; Abigail Zulock
Subject: RE: UMC Minutes for Review
A few changes:
Can you please add under #6 that we want the District to keep the mask mandate to support vulnerable
populations and children in the branches.
I don't think we need to have the plus delta on the notes.
Thanks,
Hannah Hollander
Staff Representative
Washington State Council of County and City Employees
Council 2, AFSCME, AFL-CIO

289.  In a June 9, 2021 email, TRL employee Trina Folley revealed TRL's discriminatory

intention by indicating she felt most patron claims of exemption or vaccinated status were false:

From: Trina Folley [mailto:tfolley@trl.org]
Sent: Wednesday, June 9, 2021 12:47 PM
To: 28:0af95b67-5890-4306-9c1c-a8591cead09e; Kristina Kauffman; Matthew Van Norman; Erica McCaleb;
Elizabeth Kalen; Mike McGowan; Stefan Abuan; Cynthia Thurow; Mary Clark; Judy Taylor; Cristal Splitter;
Audrey Grey
Subject:
funny how many "medical exemptions" seem to have disappeared   I'm guessing in a cpl weeks they'll all turn in
to "fully vaccinated" anyway though.

290.  September 14 wasn't the first time TRL had to deal with the situation of dealing with a

patron who requested entry into the building via their medical exemption status.  On August 14,

2021, August 21, 2021 and July 22, 2021 TRL had encountered patrons calling the mask policy

illegal.

291.  TRL knew prior to the September 14 incident about Plaintiff's need to pull the mask

down below his nose.  From a September 1, 2021 incident report created by TRL:

From: TRL Intranet [mailto:no-reply@sharepointonline.com]

Complaint -                                          63                          Christian Doscher, pro se
                                                                                6435 Doe St. SE, Tumwater, WA. 98501
                                                                                            360-339-3257
                                                                                        barryjoneswhat@gmail.com

Sent: Wednesday, September 1, 2021 1:37 PM
To: Michael Mason
Subject: TU Patron Log - Permalink
9/1 Bernard asked this patron and the patron across from them to raise their masks over their noses. The patrons complied. This took place directly in front of me, as I was at the Circ Desk and the patrons computer was in my line of sight. A couple minutes later, I could see both patrons again had their masks below their noses. I talk to them, saying that I know Bernard had just asked them to raise their masks, and that they had been asked previously, and that if they were unable to comply they may need to leave the library for the day. Bernard came over and backed me up and explained further to both patrons. After this I witnessed Christian to be wearing their mask below their nose consistently for several minutes, and I let Bernard know this. I also shared with Bernard that there was a pervious patron log entry on this patron. Shortly afterwards Bernard spoke to this patron as they were re-entering the library and let them know again that it is a requirement to wear a mask over the nose and mouth while in the library. **The patron said our mask requirement is illegal with regard to medical exemptions**. Bernard let them know that we are following the policies that the library has created and that Christian could speak to the TRL's administration if they like. The patron said they understood this. They also said they need to use a computer. They were informed about the option to checkout a Chromebook. They also expressed interest in browsing and were told they can browse if they comply with wearing a mask over the mouth and nose, or that library staff could put together a grab bag for them. The patron re-entered the library, and no other staff conversations have been needed at this point.

292.  In an August 13, 2021 email, Jones asked Heywood to extend the TRL mask-mandate:

From: Kendra Jones [mailto:kjones@trl.org]
Sent: Friday, August 13, 2021 9:59 AM
To: Brenda Lane; Andrea Heisel; Cheryl Heywood; Rose Enos-Weedmark
Subject:
Cheryl, will you add the mask mandate in your highlights to save me from making another all staff post?

293.  In an August 18, 2021 email, TRL employee Jared Criswell said TRL's mask policy is now "official" and TRL should use the "blame the governor" excuse for those who don't like it:

From: Jared Criswell [mailto:jcriswell@trl.org]
Sent: Wednesday, August 18, 2021 3:34 PM
To: Cristal Splitter; 28:0af95b67-5890-4306-9c1c-a8591ccad09e; George Banks; Hana Cahill; 28:817c2506-de4a-4795-971e-371ea75a03ed; Stephenie Reece; Laura Young; Sarah Alston; Jane Sherry; Bryce Luke; Peter Benitz; Lynn Smith
Subject:
It's official: indoor mask mandate starts the 23rd. We can add "blame the Governor" back to our toolkits

294.  Heywood's role in creating this discriminatory policy is clear from the email Jones sent to Heywood two days after the September 18 incident:

From: Kendra Jones [mailto:kjones@trl.org]
Sent: Monday, September 20, 2021 9:59 AM
To: Brenda Lane; Andrea Heisel; Cheryl Heywood; Rose Enos-Weedmark
Subject:
Cheryl, I am going to need to talk to Sofia regarding medical exemptions for wearing a mask. I'd at least like her to be aware that **we are getting patrons pushing back on us not letting them in without a mask when**

Complaint -                                    64                 Christian Doscher, pro se
                                                               6435 Doe St.  SE, Tumwater, WA.  98501
                                                                          360-339-3257
                                                                  barryjoneswhat@gmail.com

1  **they say they have a medical exemption**. And a couple have threatened to sue. Could I use a bit of her time to make sure what we are doing is ok where she is concerned?

2  ## COUNT 19:   NEGLIGENCE OF
   ## DEFENDANT BAUGHN ON SEPTEMBER 14

3
4  To succeed on a negligence claim in Washington, plaintiff must establish (1) that defendants owed him a duty (2) that they breached (3) resulting in injury (4) proximately caused by the breach.

5  Tate v. Smith, Dist. Court, WD Washington 2020
   citing Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn.2d 233, 243 (2001)

6  295.   *Duty* –

7  Under Washington common law, the City owes a duty to refrain from causing foreseeable harm in the course of law enforcement interactions with individuals. **Because the duty at issue in this case, grounded in common law negligence, is owed specifically by Officer Volk to Beltran-Serrano rather than to the public as a whole, the public duty doctrine does not apply**… **Beltran-Serrano's negligence claims arise out of Officer Volk's direct interaction with him, not the breach of a generalized public duty**. The City therefore owed Beltran-Serrano a duty in tort to exercise reasonable care…In this case, however, **the specific tort duty owed to Beltran-Serrano arises from Officer Volk's affirmative interaction with him.** The public duty doctrine does not apply to prevent the City from being found liable in tort.

8
9
10  Beltran-Serrano v. City of Tacoma, 442 P. 3d 608, 611-615 (Wash: Supreme Court 2019)

11  296.  As alleged earlier, on September 14, officer Baughn engaged in "affirmative

12  interactions" with Plaintiff, including a) telling Plaintiff that Plaintiff had committed no crime,

13  and b) telling Plaintiff "you need to leave immediately".  Baughn thus had a duty, *specific to*

14  *Plaintiff*, not a generalized public duty *(Beltran-Serrano, supra)*, to terminate the September 14

15  Terry stop at the point Baughn concluded Plaintiff committed no crime.

16  297.   *Breach* - After concluding Plaintiff committed no crime, Baughn continued the Terry

17  stop anyway by requiring Plaintiff to leave the Library.

18  298.   *Causation* – Baughn, with backup from Brown and Black, physically escorted

19  Plaintiff out of the library.

20  299.   *Damages* – As as result of this terry stop, Plaintiff endured violation of his right

21  against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation,

22  indignity and loss of his right as a member of the general public to access the Library.

23
24
25  Complaint -                            65                    Christian Doscher, pro se
                                                        6435 Doe St.  SE, Tumwater, WA.  98501
                                                                360-339-3257
                                                           barryjoneswhat@gmail.com

**COUNT 20:   NEGLIGENCE OF DEFENDANT
TUMWATER ON SEPTEMBER 14**

300.  A municipal Defendant may continue to remain liable for negligence even if the

*Monell*-claim fails:

> On August 5, 2018, Lucht and Whittom responded to a report of a domestic dispute at the home of Wangsheng
> Leng and Liping Yang in Issaquah…Because Lucht and Whittom were on duty as Issaquah police officers at
> the time the events at issue occurred, the **City of Issaquah has potential respondeat superior liability** as to
> plaintiff's negligence claim. See Beltran-Serrano, 193 Wn.2d at 551-52. **Thus, notwithstanding the dismissal
> of plaintiff's Monell claim, the City of Issaquah will remain a defendant in this action**…whether they acted
> in "good faith" constitutes a question of fact that cannot be decided on summary judgment. Defendants' motion
> for summary judgment on the basis of statutory immunity is DENIED.
> Estate Of Leng v. City of Issaquah (WD Washington, Dec. 17, 2020)

301.    City of Tumwater is liable for the negligence of Baughn, see *Beltran-Serrano v. City

of Tacoma*, supra.  Plaintiff incorporates by reference all prior allegations about officer Baugh's

September 14 conduct as if fully set forth herein.

302.    ***Damages*** – As as result of this terry stop, Plaintiff endured violation of his right

against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation,

indignity and loss of his right as a member of the general public to access the Library.

**COUNT 21:   NEGLIGENCE OF DEFENDANT
LIBRARY ON SEPTEMBER 14**

303. ***Duty*** - As alleged, supra, the ADA imposes a duty on the Library to grant reasonable

accommodation requests.  As argued supra, it doesn't matter if TRL's interpretation of Governor

Inslee's state law mask-mandate was correct, conflict-preemption doctrine had required the

Library to obey the ADA regardless.

304. ***Breach*** – On September 14 the Library withdrew its accommodation of Plaintiff's

disability for no legally justifiable reason.

305. ***Causation*** – Plaintiff would never have been trespassed if Library hadn't engaged in

the above-described breach.

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

306.   *Damages* – As as result of this terry stop, Plaintiff endured violation of his right against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

**COUNT 22:    NEGLIGENCE OF DEFENDANT
HEALD ON SEPTEMBER 14**

307. *Duty* – Heald, working for a Library governed by the ADA, owed a duty to Plaintiff to refrain from violating his ADA disability-rights.

308. *Breach* – As alleged supra, on September 14 Heald violated Plaintiff's right of accommodation under the ADA by causing Plaintiff to be trespassed from the Library.

309. *Causation* – "But for" Heald's trespassing Plaintiff, Plaintiff would not have been trespassed.

310.   *Damages* – As as result of this terry stop, Plaintiff endured violation of his right against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

**COUNT 23:    NEGLIGENCE OF DEFENDANT
NOWITZ ON SEPTEMBER 18**

311. *Duty* – Nowtiz's working for a Library governed by the ADA, owed a duty to Plaintiff to refrain from violating his disability-rights.

312. *Breach* – As alleged supra, on September 18 Nowtiz violated Plaintiff's right of accommodation under the ADA and WLAD by denying his requested disability accommodation.

313. *Causation* – "But for" Nowitz's trespassing Plaintiff, Plaintiff would not have been trespassed.

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

314.   ***Damages*** – As as result of this terry stop, Plaintiff endured violation of his right against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

## COUNT 24:   NEGLIGENCE OF DEFENDANT
## JONES ON SEPTEMBER 18

315.   ***Duty*** – Jones in working for a Library governed by the ADA, owed a duty to Plaintiff to refrain from violating his disability-rights.  A supervisor who did not personally participate in the alleged misconduct may be held liable only "based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)."Thus, a supervisor may `be liable in [their] individual capacity for [their] own culpable action or inaction in the training, supervision, **or control** of [their] subordinates; **for [their] acquiescence in the constitutional deprivation**; or for conduct that showed a reckless or callous indifference to the rights of others.'" Rodriguez v. County of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018)

316.   ***Breach*** – As alleged supra, on September 18 Jones facilitated Nowitz' unlawful denial of Plaintiff's ADA accommodation request.

317.   ***Causation*** – "But for" Jones' facilitating Nowitz's discriminatory acts, supra, Plaintiff would not have been trespassed from the library.

318.   ***Damages*** – As as result of this terry stop, Plaintiff endured violation of his right against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

## COUNT 25:     NEGLIGENCE OF DEFENDANT
## BAUGHN ON SEPTEMBER 18

319.   *Duty* – On September 18 Baughn himself concluded that Plaintiff had committed no crime and left the library without confronting Plaintiff.  Thus Baughn was aware of his duty to refrain from subjecting Plaintiff to a Terry stop that day for Plaintiff's presence in the Library. Baughn also engaged in affirmative interactions with Plaintiff on September 18, thus requiring that his duty to refrain from misconduct was now particularized to Plaintiff and was not a generalized public duty *(Beltran-Serrano, supra)*.

320.   *Breach* – Baughn returned to the library a second time on September 18, engaged in affirmative interactions with Plaintiff *(Beltran-Serrano, supra)* and despite no change in circumstance beyond Nowtiz merely gaining authorization from Jones to pursue criminal prosecution, subjected Plaintiff to unconstitutional Terry stop resulting in unlawfully trespassing of Plaintiff from all Washington State TRLs for one year.

321.   *Causation* – "but for" Baughn's breach, Plaintiff would not have endured this violation of his constitutional rights.

322.   *Damages* – As as result of this terry stop, Plaintiff endured violation of his right against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

## COUNT 26:     NEGLIGENCE OF DEFENDANT
## MORAN ON SEPTEMBER 18

323.   *Duty* – Moran engaged in affirmative interactions with Plaintiff on September 18, as alleged supra, thus Moran's unlawfully imposing a Terry stop and trespass on Plaintiff cannot possibly be shielded by the public duty doctrine:

> Serrano arises from Officer Volk's affirmative interaction with him. The public duty doctrine does not apply to prevent the City from being found liable in tort.

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

Beltran-Serrano v. City of Tacoma, 442 P. 3d 608, 611-615 (Wash: Supreme Court 2019)

324. **Breach** – Moran warned Plaintiff on September 18 that Plaintiff would be subject to arrest if he did not leave the Library.  This was unlawful since Plaintiff had not engaged in any criminal activity, since a) the library was open to the public at the time, b) Plaintiff obeyed all lawful policies required to justify his entering or accessing the library, d) nothing any witness ever told Moran or any other officer that day indicated Plaintiff had disobeyed any lawful policy of the library or engaged in criminal conduct, and d) as demonstrated earlier, the Library's adult mask policy was not lawful, thus Plaintiff's *violating* an *unlawful* mask-policy affords Defendants zero defense, for rather obvious reasons.

325. **Causation** – "But for" Moran's conduct, supra, Plaintiff would not have been trespassed nor endured violations of his constitutional rights.

326. **Damages** – As as result of this terry stop, Plaintiff endured violation of his right against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

### COUNT 27:     DEFENDANT BOARD OF TRUSTEES' VIOLATION OF 42 U.S.C. § 1983

327. "The board is ultimately responsible for assuring that federal and state laws are reflected in library policies and procedures and that the constitutional rights of individuals are protected." [6]  A supervisor who did not personally participate in the alleged misconduct may be held liable only "based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)."Thus, a supervisor may `be liable in [their] individual capacity for [their] own culpable action or inaction

---

[6] https://wiki.sos.wa.gov/trustees/Policy.ashx

Complaint -                                          70                  Christian Doscher, pro se
                                                                         6435 Doe St. SE, Tumwater, WA. 98501
                                                                         360-339-3257
                                                                         barryjoneswhat@gmail.com

in the **training**, supervision, or control of [their] subordinates; for [their] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" Rodriguez v. County of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018)

328.   As alleged supra, the Library Board of Trustees created the mask-policy that motivated Heald, Nowitz and Jones to seek police-assisted trespass of Plaintiff.  On September 13, 2021, the library's policy statement at https://www.trl.org/policies said:

> All policies are approved by the Timberland Regional Library Board of Trustees. [7]

329.   Therefore the Trustees, by "approving" of the mask policy thus "ratified" it, and are thus jointly and severally liable for damages proximately caused by their creation or approval of the TRL mask-policy that caused the constitutional violations herein.

330.   *Causation* – "But for" the Trustees' creation of the policy and their logically necessary acquiescence in the violating of breathing-disabled patron's right to reasonable accommodation, and their logically necessary acquiescence in the police-assisted trespass of all such patrons who enforce their right to an accommodation, Plaintiff would not have been trespassed from the library.

331.   *Damages* – As as result of this terry stop, Plaintiff endured violation of his right against unconstitutional seizure, his right to an ADA accommodation, and endured humiliation, indignity and loss of his right as a member of the general public to access the Library.

## COMPENSATORY DAMAGES

332.   "…a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries

---

[7] https://www.trl.org/sites/default/files/attachments/s-%20Epidemic%2C%20Pandemic%2C%20and%20Communicable%20Diseases%20Policy.pdf

Complaint -                                         71                          Christian Doscher, pro se
                                                                                6435 Doe St. SE, Tumwater, WA. 98501
                                                                                360-339-3257
                                                                                barryjoneswhat@gmail.com

suffered as a consequence of those deprivations. The recovery should be guided by common-law

tort principles — including principles of causation . . . ." Train v. City of Albuquerque, 629 F.

Supp. 2d 1243, 1251 (D.N.M. 2009)(Browning, J.).  Plaintiff demands the following amounts

from each Defendant:

333.    $10,0000 in compensatory damages from Defendant Heald;

334.    $10,0000 in compensatory damages from Defendant Nowitz;

335.    $10,0000 in compensatory damages from Defendant Baughn;

336.    $10,0000 in compensatory damages from Defendant Brown;

337.    $10,0000 in compensatory damages from Defendant Black;

338.    $10,0000 in compensatory damages from Defendant Moran;

339.    $10,0000 in compensatory damages from Defendant Dawson;

340.    $350,000 in compensatory damages from Defendant Tumwater;

341.    $10,0000 in compensatory damages from Defendant Trustee Hall;

342.    $10,0000 in compensatory damages from Defendant Trustee Oliver;

343.    $10,0000 in compensatory damages from Defendant Trustee Zylstra;

344.    $10,0000 in compensatory damages from Defendant Trustee Blanton;

345.    $10,0000 in compensatory damages from Defendant Trustee Dickhoff;

346.    $10,0000 in compensatory damages from Defendant Trustee Sebby;

**PUNITIVE DAMAGES AGAINST HEALD**

347.    A jury may assess punitive damages under § 1983 when a defendant's conduct

involves "reckless or callous indifference to the federally protected rights of others" without

regard to actual intent or malice. Lawman v. City and County of San Francisco, 159 F. Supp. 3d

1130, 1155 (Dist. Ct., ND Calif. 2016) citing Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75

Complaint -                                72                    Christian Doscher, pro se
                                                6435 Doe St.  SE, Tumwater, WA.  98501
                                                        360-339-3257
                                                barryjoneswhat@gmail.com

L.Ed.2d 632 (1983).  To recover punitive damages in connection with a § 1983 claim, a plaintiff must prove that the defendant's conduct (i) was malicious, (ii) was oppressive, or (iii) involved reckless or callous disregard for the Plaintiff's constitutional rights. See Smith v. Wade, 461 U.S. 30, 56 (1983); Dang v. Cross, 422 F.3d 800, 807-08 (9th Cir.2005).

348.    *(i) was malicious* – Heald was aware of TRL's disability investigation and accommodation duties under the ADA.  Heald's unexplained withdrawal of the accommodation request was therefore malicious.

349.    *(ii) was oppressive* – Heald interrupted Plaintiff when Plaintiff was testifying to officer Baughn on September 14, and Heald's seeking to have Plaintiff trespassed from the Library was obviously oppressive toward disabled Plaintiff's right to be given a disability accommodation.

350.    *(iii) involved reckless disregard for the Plaintiff's constitutional rights* – Heald's conduct was no less than reckless seeing that TRL had granted Plaintiff's disability request one hour previously.

351.    *callous disregard for the Plaintiff's constitutional rights* – Heald's unjustified trespassing Plaintiff from the library so soon after TRL granted his disability accommodation request indicates Heald's callous disregard for Plaintiff's constitutional rights, since she surely knew that by asking police to trespass Plaintiff, the inevitable Terry stop would be unlawful. Plaintiff thus demands $10,0000 in punitive damages from Defendant Heald;

### PUNITIVE DAMAGES AGAINST NOWITZ

352.    *(i) was malicious* – Nowtiz on September 18 was quite aware of TRL's disability investigation and accommodation duties under the ADA, and she telephoned Jones to seek further clarification of the matter.   Nowtiz repeated denial of Plaintiff's accommodation requests

Complaint -                                       73                     Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

and her consultation with Jones in an effort to overcome Baughn's admission that Plaintiff had committed no crime that day, was malicious.

353.   **(ii) was oppressive** – For the same reasons, Nowtiz's conduct was oppressive in rendering Plaintiff unable to use the library.

354.   **(iii) involved reckless disregard for the Plaintiff's constitutional rights** – For the same reasons, Nowtiz's conduct was in reckless and callous disregard for Plaintiff's constitutional and disability rights.  Plaintiff demands $10,0000 in punitive damages from Nowtiz.

## PUNITIVE DAMAGES AGAINST JONES

355.   Defendant Jones is a supervisory level TRL employee who personally participated in the September 18 trespassing of Plaintiff, by following up with a letter to Plaintiff as follows:

9/20/21
Christian Doscher
6435 Doe St
Tumwater, Wa
98501

As a result of your conduct in relation to Timberland Regional Library (TRL), you are prohibited from being present at any library operated by TRL, including parking areas and grounds designated for use by TRL employees and patrons, and from using any TRL services, until September 18, 2022. Further, you are prohibited from intimidating or harassing TRL employees or patrons.

The conduct to which I refer is as follows:

On September 18th, 2021, in the Tumwater Timberland Library, you refused to wear a mask while in the library building and you also refused to leave the library building unless the police were involved.  Additionally, on September 14, 2021 police were needed to remove you due to refusal to wear a mask and failure to leave the library when asked.

If you believe that you are not responsible for such conduct and/or that there are mitigating circumstances about which I should be aware in relation to the content of this letter, you may request a meeting to talk with me.

Requests must be sent in writing within 7 days of this notice. All meetings are conducted by phone.

If you have library materials checked out at this time, you may return all of those materials to any of our book drops to avoid fees.  This is the only, one time, exception for you to be on TRL grounds during the period of time you are trespassed from TRL property.

Complaint -                                     74                      Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

Please be aware that if you do not comply with the terms of this letter that you will be considered as a trespasser on library property and that law enforcement will immediately be informed that you are trespassing, and you may be issued a trespass order of longer duration.

Sincerely,


Kendra Jones
Deputy Director

356.    Jones' supervisory position over other TRL staff is clear from the memo she sent to Heald and thus to all other TRL staff after the September 14 incident, supra, with <u>instructions</u> to trespass Plaintiff for a year if the same thing happens again:

> From: Leanne Heald [mailto:lheald@trl.org]
> Sent: Wednesday, September 15, 2021 1:17 PM
> To: Kayla Emerson; Nicole Thode; Bernard Weathersbee; Mari Nowitz; Michael Mason; Samantha Pry; Chris Jordan; Tammra Kennedy; Melissa Barrett; Jonathan Frady; Diane Froelich; Alice Rosewater; Amber Solomon; Cristal Splitter; Laura Bassett; Peter Fekter; Monica Dalton
> Subject:
> Hi, I'm copying you all the latest response I got **from Kendra** in regards to Christian Doscher after having to have the police escort him out yesterday for the day for continuing to wear his mask improperly and giving staff a hard time. From Kendra: <u>"If he violates again and won't leave, let him know that if he does not leave you will have to call the police. And that if you do that this time the trespass will be for one year and will be issued by the police. Verify that this is what he wants to happen. In other words we want to be very clear with him what will happen if he doesn't leave."</u> Most likely a supervisor will be here to handle this but in the rare instance something happens when all three of us are out, I wanted to let you know how we are to handle this.

357.    ***(i) was malicious*** – Nowitz only engaged in her malicious behavior, supra, because she had been authorized by Jones to do so.

358.    ***(ii) was oppressive*** – For the same reasons, Jones' conduct was oppressive.

359.    ***(iii) involved reckless disregard for the Plaintiff's constitutional rights*** – For the same reasons, Jones conduct was in reckless and callous disregard for Plaintiff's constitutional and disability rights.  Plaintiff demands $10,0000 in punitive damages from Jones.

## PUNITIVE DAMAGES AGAINST HEYWOOD

360.    The library director is entirely responsible for library operations including staff hiring and supervision, interpreting policies to staff, and achieving the goals of the library's plan.

Complaint -                                    75                      Christian Doscher, pro se
                                                                      6435 Doe St. SE, Tumwater, WA. 98501
                                                                      360-339-3257
                                                                      barryjoneswhat@gmail.com

1  Heywood (sued in her individual capacity) held supervisory authority in TRL and implemented

2  this TRL policy so deficient that the policy itself was a repudiation of constitutional rights and

3  was the moving force of a constitutional violation.  Crowley v. Bannister, 734 F.3d 967, 977 (9th

4  Cir. 2013).  A supervisor who did not personally participate in the alleged misconduct may be

5  held liable for conduct that showed a reckless or callous indifference to the rights of others.'"

6  Rodriguez v. County of Los Angeles, 891 F.3d 776, 798 (9th Cir. 2018).

7  361.    On August 3, 2020 Heywood forwarded the "no mask, no entry" policy to several

8  other persons and TRL staff.

9  362.    On August 19, 2021, Heywood indicated the policy of trespass was still in effect:

10  On Thu, Aug 19, 2021 at 3:18 PM Cheryl Heywood <cheywood@trl.org> wrote:
   Like Tamara and Tom, TRL enforces mask wearing and will trespass people if they do not.
11  Cheryl Heywood
   Executive Director
12  Timberland Regional LIBRARY

13  363.    On May 21, 2021, Heywood recommended to the TRL Union that the library move

14  "slowly" to accept any changes *Labor & Industry* made to the mask policies.  From the TRL

15  *Union-Management Committee Meeting Minutes*:

16  6) Discussion about changes to CDC guidelines
   Cheryl shares that new guidelines were just received from L&I, however we are planning to
   stay where we are and move slowly on this process. Hannah requests that we keep in place,
17  that both patrons and staff remain with a mask mandate.

18  364.    *(i) was malicious* – There is no lawful justification for Heywood's creation of a

19  policy that enables TRL to violate the ADA.  Such policy-creation was malicious toward

20  Plaintiff, against whom the policy was enforced.

21  365.    *(ii) was oppressive* – For the same reasons, Heywood's conduct was oppressive.

22  366.    *(iii) involved reckless disregard for the Plaintiff's constitutional rights* – For the

23  same reasons, Heywood's conduct was in reckless and callous disregard for Plaintiff's

24

25
Complaint -                              76                  Christian Doscher, pro se
                                                            6435 Doc St. SE, Tumwater, WA. 98501
                                                                     360-339-3257
                                                            barryjoneswhat@gmail.com

1  constitutional and disability rights.  Plaintiff demands $10,0000 in punitive damages from

2  Heywood.

3                              **PUNITIVE DAMAGES AGAINST EACH TRUSTEE**

4       367.    ***(i) was malicious*** – The Trustees each acted with collective malice, jointly and

5  severally, in creating their mask policy because the policy's nature was to completely and thus

6  unlawfully relieve Library of its duty under the ADA to grant reasonable disability

7  accommodation requests.

8       368.    The policy was further intended as a pretext for the Library to legally justify

9  requesting police-assisted trespass of patrons not committing any crime.

10      369.    ***(ii) was oppressive*** – For the same reasons, the Trustees' creation and implementation

11  of said policy was oppressive.

12      370.    ***(iii) involved reckless disregard for the Plaintiff's constitutional rights*** – For the

13  same reasons, the Trustees' creation of such policy was in reckless and callous disregard for

14  Plaintiff's rights under the ADA and under the 4th Amendment to the U.S. Constitutional.

15  Plaintiff demands the following amounts from the Trustees:

16      371.    $10,0000 in punitive damages from Defendant Trustee Hall;

17      372.    $10,0000 in punitive damages from Defendant Trustee Oliver;

18      373.    $10,0000 in punitive damages from Defendant Trustee Zylstra;

19      374.    $10,0000 in punitive damages from Defendant Trustee Blanton;

20      375.    $10,0000 in punitive damages from Defendant Trustee Dickhoff;

21      376.    $10,0000 in punitive damages from Defendant Trustee Sebby;

22

23

24

25

Complaint -                                     77                 Christian Doscher, pro se
                                                                   6435 Doe St. SE, Tumwater, WA. 98501
                                                                   360-339-3257
                                                                   barryjoneswhat@gmail.com

## PUNITIVE DAMAGES AGAINST BAUGHN

377.    ***(i) was malicious*** – Police chief Weiks' exoneration letter admits Plaintiff was "free to leave" on both incident dates.  On both incident dates Baughn admitted Plaintiff had committed no crime.  Therefore Baughn's trespassing Plaintiff from the library on both dates anyway was indisputably malicious.

378.    ***(ii) was oppressive*** – For the same reasons Baughn's trespassing Plaintiff from the Library on both incident dates was oppressive.

379.    ***(iii) involved reckless or callous disregard for the Plaintiff's constitutional rights*** – For the same reasons Baughn's trespassing Plaintiff from the Library on both incident dates was in reckless and callous disregard for the Plaintiff's constitutional rights.  Plaintiff demands $10,0000 in punitive damages from Officer Baughn.

## PUNITIVE DAMAGES AGAINST MORAN

380.    ***(i) was malicious*** – Police chief Weiks' exoneration letter admits Plaintiff was "free to leave" on both incident dates, which renders perfectly certain that Weiks thus disapproves of Moran's September 18 imposition of Terry stop with no reasonable articulable suspicion since Baughn, who accompanied Moron on that date, had concluded on September 18 that Plaintiff's refusal to leave the library upon request did not render his presence in the library a criminal act.  Moran's trespassing of Plaintiff on that date was therefore malicious.

381.    ***(ii) was oppressive*** – for the same reasons Moran's September 18 conduct was oppressive.

382.    ***(iii) involved reckless or callous disregard for the Plaintiff's constitutional rights*** – for the same reasons Moran's September 18 conduct was in reckless and callous disregard for

Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

1    Plaintiff's constitutional rights.  Plaintiff demands $10,0000 in punitive damages from Officer

2    Moran.

3                    **PUNITIVE DAMAGES AGAINST BROWN**

4        383.   An officer may be liable even if her own conduct does not independently constitute a

5    constitutional violation if he or she was an integral participant in the challenged action.  Boyd v.

6    Benton Cty., 374 F.3d 773, 780 (9th Cir. 2004)(holding that officers who provided armed backup

7    for another officer who unconstitutionally deployed a flash-bang device could be held liable). An

8    officer thus may "be held liable where he is just one participant in a sequence of events that gives

9    rise to a constitutional violation." Nicholson v. City of L.A., 935 F.3d 685, 691-92 (9th Cir.

10   2019).  A plaintiff must "establish the `integral participation' of the officers in the alleged

11   constitutional violation." Jones, 297 F.3d at 935; see Torres v. City of Los Angeles, 548 F.3d

12   1197, 1206 (9th Cir.2008). "Integral participation" requires "some fundamental involvement in

13   the conduct that allegedly caused the violation." Blankenhorn v. City of Orange, 485 F.3d 463,

14   481 n. 12 (9th Cir.2007); see Torres, 548 F.3d at 1206. **However, "`integral participation' does**

15   **not require that each officer's actions themselves rise to the level of a constitutional**

16   **violation." Boyd v. Benton County, supra.**

17       384.   *(i) was malicious* – Brown provided backup for Baughn during the September 14

18   incident and assisted in removing Plaintiff from the library, therefore, she helped facilitate

19   Baughn's unlawfully extended Terry stop, therefore Brown's conduct was malicious.

20       385.   *(ii) was oppressive* – For the same reasons Brown's conduct was oppressive.

21       386.   *(iii) involved reckless or callous disregard for the Plaintiff's constitutional rights* –

22   For the same reasons Brown's conduct was in reckless or callous disregard for the Plaintiff's

23   constitutional rights.  Plaintiff demands $10,0000 in punitive damages from Officer Brown.

24

25   Complaint -                          79                    Christian Doscher, pro se
                                                               6435 Doe St. SE, Tumwater, WA. 98501
                                                               360-339-3257
                                                               barryjoneswhat@gmail.com

### PUNITIVE DAMAGES AGAINST BLACK

387.    See *Boyd v. Benton Cty* and *Nicholson v. City of L.A., supra*. *(i) was malicious* – Black provided backup for Baughn during the September 14 incident and assisted in removing Plaintiff from the library, therefore, she helped facilitate Baughn's unlawfully extended Terry stop, therefore Black's conduct was malicious.

388.    *(ii) was oppressive* – For the same reasons Black's conduct was oppressive.

389.    *(iii) involved reckless or callous disregard for the Plaintiff's constitutional rights* – For the same reasons Black's conduct was in reckless or callous disregard for the Plaintiff's constitutional rights.  Plaintiff demands $10,0000 in punitive damages from Officer Black.

### PUNITIVE DAMAGES AGAINST DAWSON

390.    See *Boyd v. Benton Cty* and *Nicholson v. City of L.A., supra*. *(i) was malicious* – Dawson provided backup for Moran/Baughn during the September 18 incident, thus she helped facilitate Moran's/Baughn's unlawfully trespassing Plaintiff from the library, therefore, Dawson's conduct was malicious.

391.    *(ii) was oppressive* – For the same reasons Dawson's conduct was oppressive.

392.    *(iii) involved reckless or callous disregard for the Plaintiff's constitutional rights* – For the same reasons Dawson's conduct was in reckless or callous disregard for the Plaintiff's constitutional rights.  Plaintiff demands $10,0000 in punitive damages from Officer Dawson.

### PUNITIVE DAMAGES AGAINST DEFENDANT WEIKS

The district court correctly instructed the jury that it could find Chief Gates liable in his individual capacity if he "set[] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." Reporter's Transcript, Dec. 1: 5-6. See also McRorie, 795 F.2d at 783. Supervisory liability is imposed against a supervisory official in his individual capacity for his "own culpable action or inaction in the training, supervision, or control of his subordinates," Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir.1987); **for his "`acquiesce[nce] in the constitutional deprivations of which [the] complaint is made,'"** Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir.1988) (citation omitted); or for conduct that showed a "`reckless or callous indifference to the rights of others.'" Bordanaro, 871 F.2d at 1163.

Complaint -                                    80                    Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

…The Larezes alleged that, in his individual capacity, Gates was responsible for their constitutional deprivations **because he condoned, ratified, and encouraged** the excessive use of force..he signed a letter informing Jessie Larez that none of his many complaints would be sustained, **thereby ratifying the investigation into the Larezes' complaint.** The jury's verdict [for Larez] was not in plain error.

Larez v. City of Los Angeles, 946 F. 2d 630, 646 (9th Cir. 1991)

393.   *reckless, callous disregard and indifference* – Defendant TPD Chief Weiks'

exoneration letter of March 11, quoted supra, ratified of the unlawful conduct of Baughn, Brown,

Black, Moran, Dawson supra, even going to the extreme of denying that either incident date

involved so much as a "terry stop" and that Plaintiff was "free to leave" as alleged supra.  Since

that exoneration letter so clearly contradicts the truth that both incidents involved TPD officers

unlawfully extending a demonstrable "terry stop" into an unlawful "arrest", Weiks in that letter

is clearly trying to cover up clearly illegal conduct of his officers.  Thus Weiks in such letter was

exhibiting malicious oppression and reckless/callous indifference to Plaintiff's constitutional

rights.  Weiks would have done better to admit wrongdoing and seek settlement with Plaintiff.

Plaintiff thus demands $150,000 in punitive damages from Defendant Weiks.

## PUNITIVE DAMAGES AGAINST DEFENDANT QUILES

394.   *reckless, callous disregard and indifference* – Quiles' policy was previously

established to be in reckless and callous disregard of, and indifference to, Plaintiff's

constitutional and disability rights.  It doesn't matter that Quiles' qualified that the policy

concerns "private businesses", he never exhibited the least bit of concern over the obvious fact

that TPD were also enforcing that policy in the context of public or non-private businesses,

leading to the rational deduction that Quiles intended that policy to be applied to non-priviate

businesses too, even if he didn't specifically articulate that much.  Plaintiff seeks $250,000 in

punitive damages from Quiles.

Complaint -                                         81                     Christian Doscher, pro se
6435 Doe St.  SE, Tumwater, WA.  98501
360-339-3257
barryjoneswhat@gmail.com

**PLAINTIFF SEEKS INJUNCTIVE RELIEF**

395.   "Qualified immunity is only immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief.  Hydrick v. Hunter, 669 F.3d 937, 939-940 (9th Cir.2012).  An ADA plaintiff may seek injunctive relief against an individual defendant only if the defendant is sued in his or her official capacity.  Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir.2003).  To seek injunctive relief under Title II of the ADA, a plaintiff need only allege that she was denied meaningful access to a public entity's programs, services, or activities. Cal. Council of the Blind, 985 F. Supp. 2d at 1236 (citing K.M. ex rel. Bright, 725 F.3d at 1102).

396.   As alleged herein, Plaintiff on September 14, 2021 and September 18, 2021 was denied meaningful access to the Library's programs, services, or activities.

397.   Plaintiff asks the Court to enjoin both Defendants from enforcing the trespass document which TPD gave to Plaintiff on September 18.

398.   Plaintiff asks the Court to enjoin both Defendants from denying Library access to Plaintiff and to any person merely because that person claims a medical exemption from wearing a face mask, unless and until TRL has conducted a fact-specific analysis into the disabled person's needs and has concluded that the requested accommodation would not be reasonable.

**PLAINTIFF SEEKS DECLARATORY RELIEF**

399.   The ADA allows for Declaratory Relief. Kral v. King County, 2012 WL 726901, at *7-8 (W.D.Wash. March 6, 2012). The WLAD allows for declaratory relief:

> The Civil Rights Act provided for "other orders," including declaratory relief, and the relief provided by this act was incorporated into the WLAD.
>
> State Communication Access v. Regal Cinemas, 293 P. 3d 413, 432 (1st Div. 2013)

Christian Doscher, pro se
6435 Doe St. SE, Tumwater, WA. 98501
360-339-3257
barryjoneswhat@gmail.com

400.   Plaintiff requests an Order declaring all of the following:

   a) TRL's mask-policy violated the ADA;

   b) TPD's detainment and trespass of Plaintiff from TRL on September 14 was unlawful;

   c) TPD's detainment and trespass of Plaintiff from TRL on September 18 was unlawful;

   d) The Library's mask-policy was inconsistent with the orders Governor Inslee published in 2021;

   e) The Library's mask-policy was inconsistent with the Orders published by the Washington Secretary of Health in 2021;

401.   Plaintiff demands costs, attorney fees and such other and further relief as the Court may deem just and proper.

402.   I certify under penalty of perjury under the laws of the United States that the facts alleged in this Motion and Affidavit are true and accurate to the best of my knowledge and belief.

Date signed: May 5, 2022

_____
Christian Doscher,
6435 Doe St. SE
Tumwater, WA. 98501
360-339-3257,
barryjoneswhat@gmail.com

Complaint -                              83                    Christian Doscher, pro se
                                                               6435 Doe St. SE, Tumwater, WA. 98501
                                                               360-339-3257
                                                               barryjoneswhat@gmail.com



Doscher
6435 Doe St. SE
umwater, WA. 98501

Attn:
Clerk

Tacoma Court
(717 Pacific Ave.
Rm. 3100

Tacoma WA

BY
WESTERN DISTRICT OF WASHINGTON AT TACOMA
CLERK U.S. DISTRICT COURT
FILED          LODGED
RECEIVED
MAY 12 2022
DEPUTY

DOSCHER
(360) 339-3257
THE UPS STORE #6056
STE 107
5729 LITTLEROCK RD SW
TUMWATER  WA 98512-7386

3 LBS        1 OF 1
SHP WT: 3 LBS
DATE: 10 MAY 2022

SHIP ATTN  COURT CLERK
TO:  TACOMA COURT
     RM 3100
     1717 PACIFIC AVE

TACOMA  WA 98402-3234

WA 984 7-45

UPS GROUND
TRACKING #: 1Z 5RW 890 03 6585 7412

BILLING: P/P