1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTIAN DOSCHER, *pro se*,

                     Plaintiff,

    v.

CITY OF TUMWATER, *et al.*,

                  Defendants.

CASE NO. 3:22-cv-05340-RJB

ORDER ON TUMWATER
DEFENDANTS' MOTION TO
DISMISS

This matter comes before the Court on Tumwater Defendants' Motion to Dismiss (Dkt. 13). The Court has considered the pleadings filed in support of and in opposition to the motion and the remaining file, and it is fully advised.

Plaintiff Christian Doscher, proceeding *pro se*, brings this lawsuit against twenty-five defendants and claims twenty-seven causes of action arising out of alleged incidents at the Tumwater Regional Library (the "Library") on September 14 and 18, 2021. Dkt. 7. At that time, the Library had a masking policy in place in response to the COVID-19 pandemic. *See id.* at 5. Doscher claims that he has a disability that prevents him from wearing a covering over both his nose and mouth. *Id.* at 11. On both September 14 and 18, Library staff allegedly asked him to

comply with the policy and, after he refused, called the police.  He alleges that Tumwater police

unconstitutionally seized him in violation of 42 U.S.C. § 1983, and he brings claims for

conspiracy and negligence.  Dkt. 7.  Doscher requests punitive damages and both injunctive and

declaratory relief.

For the reasons set forth in this Order, Tumwater Defendants' motion to dismiss should

be granted.

## I.    FACTS AND PROCEDURAL HISTORY

### A.  FACTS

The facts set forth below are taken from the complaint and are assumed to be true for

purposes of this motion only, and they are limited to those raised against the City of Tumwater

and Carlos Quiles, R.J. Baughn, Stacy Brown, Rachael Black, James Moran, Danielle Dawson,

and Jon Weiks, all members of the Tumwater Police Department, (collectively "Tumwater

Defendants").

On September 14, 2021, the Library had a masking policy in place that read: "Starting

August 13, regardless of vaccination status all staff and patrons (5 and older) must wear a mask

inside any Timberland Libraries."  Dkt. 7 at 5.  Doscher had been previously diagnosed with a

breathing disability that causes him to become easily winded if walks with a covering over both

his mouth and nose.  *Id.* at 122.  There was also a state-wide policy in place at the time that

included recognizing mask exemptions for people with certain disabilities and prohibited

requiring proof of a disability.  *See id.* at 22.  As such, Doscher went to the Library that day

wearing a mask over his mouth but not his nose.  *Id.* at 4.

Doscher told a Library employee of his disability when he arrived, and she permitted him

to be at the Library partially masked for about an hour.  *Id.* at 13–14.  A different staff member

then told Doscher that he must mask.  *Id.* at 14.  After a bit more conversation, that employee

called the Tumwater Police Department and claimed that the Doscher refused to leave.  *Id.*

Doscher says that he had never been asked to leave and that the employee lied to the police.  *Id.*

Three Tumwater police officers, defendants Baughn, Brown, and Black, arrived soon

after the call.  *Id.* at 21.  Officer Baughen told Doscher that the Library had reported him for

refusing to wear a mask properly or leave.  *Id.*  After questioning about whether Doscher was

exempt from the mask requirement because of his disability, Officer Baughn allegedly said, "you

need to leave immediately."  *Id.* at 22.  Doscher requested that the police make a written report

of the incident to which Officer Baughn responded, "[w]e're not going to make a written report

of this, as it's not a criminal act unless you make it that way."  *Id.* at 23.  According to Doscher,

he felt compelled to follow the officer's direction to leave and left with the officers without

incident.  *Id.* at 24.  He was told that he could not return to the Library for the rest of the day.  *Id.*

A similar incident occurred on September 18, 2021, in which Tumwater police informed

Doscher that "he was not free to disregard their commands, but must leave the library or be

subject to arrest for trespass."  *Id.* at 37.  Officer Baughn, who was present both days, gave

Doscher a trespass warning document with preprinted citations to the Washington State criminal

trespass statute and told Doscher that he must stay out of the Library for the day.  *Id.* at 38.

Doscher alleges that Tumwater Police Lieutenant Carlos Quiles implemented policies and

practices that caused his injury and that Tumwater Chief of Police Jon Weiks ratified police

officers' unconstitutional behavior.  Dkt. 7.

## B. PENDING MOTION AND ORGANIZATION OF OPINION

In the pending motion, Tumwater Defendants move to dismiss all claims alleged against

Tumwater police officers and claims against the City of Tumwater for alleged police activity,

practices, and policies.  Dkt 13.  Doscher also brings claims against the City of Tumwater based on the actions of Library employees.  Dkt. 7 at 46.  Neither the pending motion to dismiss, nor does this Order address claims against the City of Tumwater for Library actions.

Doscher both opposes the motion to dismiss on its merits, and he argues that it should not be considered because it is an improper motion for reconsideration.  Dkt. 18.  He also argues that rebuttal is not needed because the motion is fatally flawed.  *Id*.  The Court will address those arguments before turning to the merits.

## II.    DISCUSSION

### A.  THE MOTION TO DISMISS IS NOT A MOTION FOR RECONSIDERATION

Doscher argues that the pending motion to dismiss is an improper motion for reconsideration because his complaint was already screened and approved when a magistrate judge approved his motion to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915A.  Dkt. 18 at 2.  He cites *Leal v. Georgia Dep't of Corr.*, 254 F.3d 1276 (11th Cir. 2001), to support his argument.

While *Leal* states that the standard for dismissal under 28 U.S.C. § 1915A is the same as under Rule 12(b)(6), it does not establish that screening under § 1915A precludes a defendant from bringing a motion to dismiss.  Furthermore, § 1915A does not apply to this case because it governs screening complaints filed by prisoners.  28 U.S.C. § 1915A(a) ("Screening – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.")  Courts may screen a complaint when reviewing an IFP motion brought by a non-prisoner, *see* 28 U.S.C. § 1915(e)(2), but that did not occur in

this case.  His IFP motion was merely approved because he did "not appear to have the funds available to afford the $403.00 Court filing fee."  Dkt. 6.

Doscher also appears to argue that Federal Rule of Civil Procedure 12(h)(3) (Lack of Subject-Matter Jurisdiction) supports his argument that the motion to dismiss is an improper motion for reconsideration.  Rule 12(h)(3) was not raised by Tumwater Defendants, is not relevant to this motion, and does not support his argument.

Therefore, the Tumwater Defendant's motion to dismiss is not an improper motion for reconsideration.

### B.  PLAINTIFF'S ARGUMENT ABOUT REBUTTAL SHOULD BE DENIED

Doscher argues that Tumwater Defendants should not be permitted to file a reply in support in their motion to dismiss because their motion is fatally flawed.  Dkt. 18 at 5.  A moving party, however, has a right to file a reply brief.  *See* Western District of Washington Local Civil Rule 7(b)(3).  That right does not depend on whether a motion has merit.

Therefore, the Court will consider Tumwater Defendants' pending motion to dismiss and the reply filed in support.

### C.  STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

1  elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

2  (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief

3  above the speculative level . . . on the assumption that all the allegations in the complaint are true

4  (even if doubtful in fact)." *Id*.  Plaintiffs must allege "enough facts to state a claim to relief that

5  is plausible on its face." *Id*. at 556.

6       Additionally, a complaint filed by a *pro se* litigant, however inartfully pleaded, must be

7  held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*,

8  551 U.S. 89, 94 (2007).  As such, courts must give *pro se* litigants notice of deficiencies in their

9  complaint and an opportunity to amend unless it is "absolutely clear that the deficiencies of the

10  complaint cannot be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir.

11  2007).

12  **D.  SECTION 1983 GENERALLY**

13       To state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct

14  complained of was committed by a person acting under color of state law, and that (2) the

15  conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

16  of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*,

17  *Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an

18  alleged wrong only if both of these elements are present.  *Haygood v. Younger*, 769 F.2d 1350,

19  1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).  To state a civil rights claim, a plaintiff

20  must set forth the specific factual bases upon which he claims each defendant is liable.  *Aldabe v.*

21  *Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Vague and conclusory allegations of official

22  participation in a civil rights violations are not sufficient to support a claim under § 1983.  *Ivey v.*

23  *Bd. of Regents*, 673 F.2d 266 (9th Cir. 1982).  To bring a § 1983 claim against a municipality or

24

municipal policy maker, the plaintiff must plausibly allege that official policy or practice was the "moving force" behind the alleged constitutional violation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 98 U.S. 658, 694–95 (1978).

## E.  COUNTS 3 AND 11: UNREASONABLE SEIZURE AGAINST CITY OF TUMWATER

Doscher claims in both Counts 3 and 11 that he was unreasonably seized in violation of the Fourth Amendment.  Dkt. 7 at 21–26.  The claims are the same, except that Count 3 arises out of the September 14 incident and Count 11 from September 18.  *Id.* at 21, 36.

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures" by the government.  U.S. Const. amend. IV.  To state a claim, a plaintiff must plausibly allege that there was a governmental search or, as in this case, seizure, and that it was unreasonable.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).

As a threshold, these claims fail because Doscher brings them against "Tumwater," which is presumably the City of Tumwater.  To bring a claim against a municipality, a plaintiff must allege that municipal policy or practice was the driving force behind the claimed injury.  *Long v. City of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  Doscher does not identify a policy or practice at issue.  Instead, both counts are based only on his interaction with City of Tumwater police officers while at the Library.  However, he also fails to state a viable claim to the extent that he intends to bring it against any individual police officer.

Doscher's argument is interesting and creative.  According to the Complaint, police officers came to the Library after receiving a call from a Library employee that Doscher refused to leave on September 14.  Dkt. 7 at 21.  After some alleged back and forth discussion about mask policy, policy exemptions, and trespass, Officer Baughn allegedly told Doscher "you need to leave immediately" and, after he did, that he was banned from the Library for the rest of the

day.  *Id.* at 22–24.  Doscher emphasizes that a reasonable person would have felt compelled to comply.  *Id.*; Dkt. 18 at 7.  He alleges that the September 18 incident was essentially the same except that he was also given a trespass warning notice.  Dkt. 7 at 37–39.  Doscher theorizes that officers seized him because they controlled his freedom of movement by pressuring him to leave the Library.  *Id.*; *Id.* at 22–24; Dkt. 18 at 7.  In other words, he wasn't seized because he was forced to stay; he was seized because he was forced to leave.

Doscher's argument draws a conclusion based on some language used in Fourth Amendment analysis, but it takes that language out of context and veers too far from the meaning of the word "seizure."  A quintessential seizure is an arrest.  *Torres v. Madrid*, 141 S.Ct. 989, 996 (2021).  As applied to a person, as opposed to property, "the word 'seizure' readily bears the meaning of a laying on of hands or the application of physical force to restrain movement[.]"  *Id.* at 995 (quoting *Hodari D.*, 499 U.S. at 626).

A seizure can be accomplished either by physical control or force.  *Torres*, 141 S.Ct. at 1001.  In a seizure based on control, there must be an objective show of authority to which a person submits.  *United States v. Mendenhall*, 446 U.S. 522, 554 (1980).  Furthermore, the submission must be to governmental detention, even if just momentarily, as would be the case in a traffic stop, *Brendlin v. California*, 551 U.S. 249 (2007), or a "stop and frisk," *Terry v. Ohio*, 392 U.S. 1 (1968).  In other words, there is only a seizure if "a reasonable person would have believed that he was not free to leave."  *Id.; see generally, NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 405 (N.D. Cal. 2021) (rejecting claim based on restraint of freedom of movement without detention).

Doscher was not seized by being pressured to leave the Library.  He not only was free to leave; he was encouraged to leave.  His freedom of movement was limited in the sense that he

felt he could not stay at the Library, but he was never detained.  Ultimately, he used his freedom of movement to leave without incident.  Dkt. 7 at 24.

The parties also frame Doscher's encounter as a "Terry stop." Dkts. 13 at 5, 18 at 7.  A Terry stop, named for *Terry v. Ohio*, 392 U.S. 1 (1968), is a seizure, but it "is a far more minimal intrusion" than an arrest.  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).  Because it is merely a brief investigative detention, an officer only needs reasonable articulable suspicion of a crime as opposed to the probable cause that is required to make an arrest.  *Wardlow*, 528 U.S. at 677.

Doscher was not subjected to a Terry stop.  It is well-established law that a police officer merely asking questions does not constitute a Terry stop.  *United States v. Brown*, 996 F.3d 998, 1005 (9th Cir. 2021) (quoting *Bostick*, 501 U.S. at 434).  It also is established that issuing a written citation alone is not a seizure.  *White v. City of Laguna Beach*, 679 F. Supp. 2d 1143, 1155–56 (C.D. Cal. 2010) (collecting cases); *see Bielanski v. Cnty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes.  To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim.").

Plaintiff alleges that he spoke with police officers and they gave him a trespass warning notice. Dkt. 7 at 38.  These actions do not amount to a Terry stop.  But even assuming that Doscher had been subjected to a Terry stop, it would not have been unreasonable because officers had reasonable articulable suspicion that he was trespassing.  Doscher alleges that Library employees told the police that he refused to leave.  It was reasonable for the officers to act as they did based on the totality of the circumstances.

Accordingly, counts 3 and 11 should be dismissed.

## F.  REMAINING CONSTITUTIONAL CLAIMS

Doscher's remaining constitutional claims are also based on his allegedly unconstitutional seizure.  He brings counts 4 and 12 against Tumwater Police Lieutenant Carlos Quiles for an alleged police department policy that Quiles implemented, and counts 5 and 13 against Tumwater Police Chief Weiks for ratifying officers' conduct at the Library.  Dkt. 7.  Count 16 includes *Monell* claims against the City of Tumwater based on Quiles' alleged policy, as well as claims based on the actions of non-moving defendants, and Doscher brings count 17 against all defendants for conspiring to subject Library patrons to seizures for not wearing masks regardless of medical exemption or disability-request.  *Id*.

In each of these claims, Doscher argues that Tumwater Defendants are liable because they caused his unlawful seizure.  As above, each of these claims fails because Doscher does not state a viable claim that he was unreasonably seized in violation of the Fourth Amendment.

In addition, Doscher's claims based on Quiles' alleged policy, counts 4, 12, and 16, should be dismissed because Doscher does not plausibly allege that the policy was the "moving force" behind the police officers' actions at the Library.  The alleged policy comes from an email Quiles sent saying that a private store has the right to deny entry to a person who refuses to wear a mask.  Dkt. 7 at 27.  The email says that officers should "[b]e diplomatic and polite and seek voluntary compliance," but that it is ultimately a private store's right to refuse service and "these circumstances are treated as a trespassing complaint just like all other trespassing complaints."  *Id*.  Assuming that this email is a policy, it merely states basic trespass law for private business.  It cannot be said "that the [alleged] injury would have been avoided" had a different policy been implemented.  *Long v. Cnty of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006).

Therefore, counts 4, 5, 12, and 13 should be dismissed, and counts 16 and 17 should be dismissed against the Tumwater Defendants.

### G. QUALIFIED IMMUNITY

Defendants in a § 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Harlow*, 457 U.S. at 815. The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. *Id*. at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872–73 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: (1) whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

As established in the previous sections, Doscher does not meet the first prong of the qualified immunity analysis. His allegations do not amount to an unconstitutional seizure. He also fails to meet the second prong. Even assuming that Doscher had a constitutional right to be at the Library and that Tumwater Defendants violated that right, his right was not clearly established at the time. Doscher argues that Officers Moran and Baughn acted in a "plainly incompetent" manner and emphasizes that he never trespassed. Dkt. 18 at 8. He also says that Weiks knew that Tumwater police prevented him from returning to the Library on those days. *Id.* at 9. But Doscher does not provide any law or supporting facts to show that he had a constitutional right to be at the Library because his breathing disability exempted him from the Library's mask policy or that Tumwater Defendants unreasonably disregarded that right. Being merely incorrect about the law of trespass does not establish a constitutional violation. The Tumwater Defendants reasonably believed that their conduct was proper and constitutional.

Therefore, qualified immunity bars Doscher's claims against all individual police officers and supervisors.

## H.  COUNTS 19, 20, 25, & 26: STATE LAW NEGLIGENCE

Doscher argues that Defendant police officers Baughn and Moran and the City of Tumwater breached a duty not to subject him to a Terry stop without reason to believe he had committed a crime. Dkt. 7 at 65–66, 69. As with the constitutional claims, Doscher's negligence claim fails because he was not subjected to a Terry stop or other seizure.

## I.  CONCLUSION

Doscher's claims against Carlos Quiles, R.J. Baughn, Stacy Brown, Rachael Black, James Moran, Danielle Dawson, and Jon Weiks should be dismissed with prejudice because it is "absolutely clear that the deficiencies of the complaint cannot be cured by amendment."

*Weilburg*, 488 F.3d at 1205.  His legal theory that he was seized because he was told he could not return to the Library for the rest of the day is not a cognizable seizure under the Fourth Amendment.  Furthermore, even if it was and even if he were seized, his claims against individual police officers and supervisors are barred by qualified immunity.  The City of Tumwater, however, should not be dismissed from the lawsuit at this time because Doscher also brings claims against it based on Library employees' conduct.

### III.  ORDER

Therefore, it is hereby **ORDERED** that:

- Tumwater Defendants' Motion to Dismiss (Dkt. 13) **IS GRANTED**;

- Defendants Carlos Quiles, R.J. Baughn, Stacy Brown, Rachael Black, James Moran, Danielle Dawson, and Jon Weiks **ARE DISMISSED** from this matter.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 30th day of August, 2022.

ROBERT J. BRYAN
United States District Judge

ORDER ON TUMWATER DEFENDANTS' MOTION TO DISMISS - 13